# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANGELLA AGUILAR, et al. | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 8:18-cv-03953-PX |
| DAVID E. HARVEY BUILDERS, Inc. *et al.*, | * | |
| Defendants. | * | |

***

## <u>MEMORANDUM OPINION</u>

Pending before the Court in this wage and hour case are Plaintiffs' motion for default judgment and dismissal of counterclaim against Jacinto Garcia against Defendant The Subcontractors Gateway, Inc. and TSCG Drywall and Painting, LLC, both doing business as "TSCG Inc." (ECF No. 102); Plaintiffs' partial motion for summary judgment against Defendant David E. Harvey Builders, Inc., doing business as "Harvey-Cleary Builders" (ECF No. 95); Defendant David E. Harvey Builders, Inc.'s motion for summary judgment against Plaintiffs (ECF No. 101); and Plaintiffs' motion to strike, or in the alternative disregard certain affidavit testimony (ECF No. 107).   Pursuant to Local Rule 105.6, no hearing is necessary.   For the following reasons, the motions are denied in part and granted in part.[1]

## I.        Background

### A.       Factual Background

In 2017, Defendant The Subcontractors Gateway, Inc. and TSCG Drywall and Painting, LLC (collectively, "TSCG") hired Plaintiffs Angella Aguilar, Luis Baires, Carlos Chavarria,

---

[1] Plaintiffs also move to dismiss TSCG's counterclaim against Plaintiff Garcia.  ECF No. 102-1 at 15–18. The Court grants this request and dismisses the claim without prejudice.  *See Ulyssix Techs., Inc. v. Orbital Network Eng'g, Inc.*, No. ELH-10-2091, 2011 WL 5555853, at *3 (D. Md. Nov. 15, 2011) (declining to dismiss counterclaim with prejudice when court did not "discern a degree of prejudice or contumacious conduct").

Blanca Ferrer, Jacinto Garcia Romero, Fabricio Marroquin, Antonio Martinez, Wilson Panozo,

Freddy Verizaga Prado, Jose Feliciano Revelo, and Jose Antonio Torres to work on a drywall

project for the Gold's Gym fitness facility at Riverdale Park Station in Prince George's County,

Maryland ("the Project").  ECF Nos. 101-6; 101-10; 101-23.  Defendant David E. Harvey

Builders, Inc. ("Harvey Cleary") managed the Project as the General Contractor.  ECF Nos. 9 ¶¶

25, 28; 100-1.  TSCG is owned and managed by Frank Marceron with the help of his wife,

Darlene Marceron.  TSCG entered into a written agreement with TSCG wherein Harvey Cleary

would pay TSCG a total of $293,832, including the cost of labor, materials, and payroll for its

services.  ECF No. 95-6 at 1, 3.

Harvey Cleary used its own template to draft the Subcontract with TSCG.  ECF No. 95-4

at 24.  The Subcontract gave Harvey Cleary the power to prohibit TSCG from employing any

"unfit" or "not skilled" person, "dismiss" any TSCG employee deemed "unsuitable" to Harvey

Cleary, and set work hours for TSCG employees.  ECF No. 95-6 at 2, 5, 29.  Harvey Cleary also

maintained substantive oversight over how TSCG accomplished certain discrete tasks.  ECF Nos.

95-4 at 12–13; 95-33.  The Subcontract also made clear that Harvey Cleary retained the sole

discretion to pay TSCG workers directly and deduct the wages paid from the amounts it owed to

TSCG.  ECF No. 95-6 at 5.  This was so even though the Subcontract disclaimed that "[n]othing

herein shall create an assignment of funds or any rights or remedies for Subcontractor's

employees . . . against Contractor."  *Id.*

Harvey Cleary agreed to pay the "labor portion" of the Subcontract every two weeks to

TSCG.  ECF No. 95-4 at 21–22; 95-6 at 30.  To effectuate payment on the Subcontract, the

defendants executed a separate "Joint Check Agreement," in which Harvey Cleary promised to

issue monthly checks to TSCG and TSCG's direct supplier, LW Supply, to "conditionally

guarantee prompt payment by the undersigned for all materials shipped, delivered, or used for this job." ECF No. 101-22. Although several subcontractors worked on the Project, Harvey Cleary had this arrangement with TSCG alone. ECF No. 100-7 at 5.

After Defendants inked the Subcontract, TSCG hired Plaintiffs to work on the Project. *E.g.*, ECF No. 101-16 at 5. Although some Plaintiffs had completed certain paperwork when hired by TSCG, no Plaintiff had completed similar applications or engaged in any hiring due diligence before working on the Project. *E.g.*, ECF Nos. 101-16 at 4; *cf.* ECF No. 101-23 (applications of Plaintiffs Aguilar and Verizaga for employment with TSCG). Throughout their employment, Plaintiffs received paychecks from TSCG. *E.g.*, ECF No. 101-16 at 7–8.

On the job, Plaintiff Jacinto Garcia acted as a project Foreman. ECF No. 100-11 at 7. Garcia was responsible for logging the number of hours each Plaintiff worked a day and communicating to them Harvey Cleary's expectations. ECF Nos. 100-11 at 8; 95-38. Garcia also completed daily logs that captured the number of manpower hours expended on certain tasks and submitted the logs to Harvey Cleary's superintendent, Tim Cole. ECF No. 101-11 at 8; 95-34; 95-9 at 19–21. Because many Plaintiffs did not speak English well or at all, Garcia would often translate instructions that he received from Cole. ECF Nos. 95-18 at 2; 95-19 at 4; 95-20 at 4.

Cole was often physically on site. ECF No. 95-5 at 7. According to Plaintiffs, Cole directly supervised their work on a daily basis, ordering work to be redone which necessitated overtime and weekend hours. ECF Nos. 95-18 at 3 (stating that Cole "regularly communicated" to Plaintiff and coworkers what tasks should be redone); 95-17 at 3 (same); 101-13 at 8 (Cole instructed where to do caulking); 95-19 at 4 (Cole required Plaintiffs to work late and on weekends). Garcia considered Cole his on-site supervisor. ECF No. 100-11 at 7. Harvey

Cleary, on the other hand, maintains that Cole never supervised Plaintiffs. Cole attests that he was on site merely to ensure site safety and to perform "quality checks."  ECF Nos. 101-1 at 10; 101-12 at 6.  Cole further considered other project foremen to have direct oversight of Plaintiffs' work.  ECF No. 95-9 at 6.

Aside from Cole, Harvey Cleary kept a tight rein on the Project in other ways.  Harvey Cleary Project Manager, Eddie Morales, communicated weekly with Garcia about Harvey Cleary's expectations.  ECF No. 100-11 at 7.  Harvey Cleary also required Plaintiffs to wear "stickers" on their hardhats of the Harvey Cleary logo along with a unique identifying number. *E.g.*, ECF No. 100-11 at 5; 95-7 at 14–15.  The number was used to identify each subcontractor and employee on the job.  ECF No. 95-7 at 14–16.  Harvey Cleary kept a log of the individuals and subcontractors corresponding to each sticker.  *Id.*  Several Plaintiffs also recall receiving Harvey Cleary badges.  ECF No. 95-22 at 3–4; 95-16 at 3; 95-17 at 3; ECF No. 95-10; *but see* ECF No. 95-9 at 5 ("Q: Did they have badges? A: Hard hat stickers.").

Likewise, Harvey Cleary set the schedule for the construction work.  ECF Nos. 95-7 at 17; 95-6 at 30.  While TSCG was afforded some leeway to make schedule changes, Harvey Cleary had the final approval.  *Id.*  Further, Harvey Cleary required Plaintiffs to obtain Cole's written pre-approval before beginning any task that emitted flames or sparks in the form of a "hot work permit" which authorized a day, time, and location for the task to be completed.  ECF Nos. 95-9 at 41–42; 95-27.  And the subcontractors were required to submit daily reports of manpower used and tasks completed to Cole for Harvey Cleary's records.  ECF Nos. 95-9 at 27–31; 95-34.

Sometime in early January 2018, the relationship between Harvey Cleary and TSCG began to deteriorate.  As an apparent consequence, Plaintiffs stopped getting paid for their work.

4

Plaintiffs complained to representatives of both TSCG and Harvey Cleary, such as Bob Perrone, Tim Cole, and Harvey Cleary Senior Project Manager, Mark Voce.  The response was always the same:  keep working, and eventually, payment will come.  *E.g.*, ECF No. 95-19 at 2–5; 95-20 at 3–4; 95-21 at 3–4; 95-22 at 2–3.

 By the end of January, Plaintiffs still had not been paid.  Perrone met with Plaintiffs and distributed paychecks, but then instructed them not to cash the checks because TSCG did not have the funds to cover them.  *E.g.*, ECF No. 101-11 at 9–10.  Plaintiffs next complained to Voce, who instructed them to keep working.  *E.g.*, ECF No. 95-12 at 5.  Voce, for his part, concedes that he told Plaintiffs he would "try to work with TSCG to get the issue resolved," but denies that he asked or demanded that Plaintiffs keep working without pay.  ECF No. 101-7 at 10–11.

Also in the same month, TSCG tried to cut ties with Harvey Cleary even though representatives from Harvey Cleary staunchly maintain that TSCG remained on the project through the end of February 2018.  ECF Nos. 15 at 12; 101-4 at 16.  In any event, Harvey Cleary began supplementing TSCG's workforce to keep the project on track.  ECF Nos.  95-4 at 31; 95-11.  Plaintiffs continued working on the Project through staggered dates in February 2018, all without receiving pay.  ECF Nos. 95-38; 101-2–101-12.

### B.     Procedural Background

On December 21, 2018, Plaintiffs filed a Complaint against Harvey Cleary, TSCG, and Frank and Darlene Marceron, alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"); the Maryland Wage and Hour Law, Md. Code. Ann., Lab. & Empl. §§ 3-401 *et seq.* ("MWHL"); and the Maryland Wage Payment and Collection Law, Md. Code Ann. Lab. & Empl. §§ 3-501 *et seq.* ("MWPCL"), and Maryland common law.  ECF No. 1 ¶¶ 80–103.

As relief, Plaintiffs ask for damages for unpaid regular and overtime wages, enhanced damages, and attorneys' fees and costs under the three statutes.  ECF No. 1 ¶ 103.

Harvey Cleary next filed a crossclaim against TSCG.  ECF No. 20.  TSCG and Darlene and Frank Marceron also counterclaimed against Plaintiff Garcia and crossclaimed against Defendant Harvey Cleary.  ECF No. 44.  On September 2, 2020, a Suggestion of Bankruptcy was filed as to Frank Marceron, naming Darlene Marceron as his co-debtor.  ECF Nos. 58, 59.  On June 15, 2021, the Court granted Plaintiffs' motion to dismiss without prejudice their claims against Darlene Marceron.  ECF Nos. 87, 90.

On March 23, 2021, TSCG's counsel withdrew from representation.  ECF No. 81.  TSCG failed to obtain new counsel, and the Clerk entered default against the corporation on July 19, 2021.  ECF Nos. 98–99.  Harvey Cleary next moved to dismiss TSCG's crossclaim against it, which the Court granted on August 12, 2021.  ECF No. 103.  Several days later, TSCG filed a voluntary Chapter 7 bankruptcy petition.  *In re TSCG Drywall and Painting, LLC*, Case No. 21-br-15322, (Bankr. D. Md. Nov. 18, 2021), ECF Nos. 1, 9.  On August 18, 2021, a Suggestion of Bankruptcy was entered in this case as to TSCG.  ECF No. 104.

After protracted discovery, Harvey Cleary and Plaintiffs filed the pending cross motions for partial summary judgment which focus solely on whether Harvey Cleary and TSCG jointly employed of Plaintiffs.  ECF Nos. 95; 101.  Plaintiffs also moved for default judgment against TSCG on the wage and hour claims and to dismiss TSCG's counterclaim against Plaintiff Garcia.  ECF No. 102.  The Court first addresses the cross motions for summary judgment.

## II.        Summary Judgment

### A.        Standard of Review

Plaintiffs and Harvey Cleary each move for summary judgment, implicating Federal Rule of Civil Procedure 56.  Summary judgment is appropriate when the Court, viewing the evidence in the light most favorable to the non-moving party, finds no genuine disputed issue of material fact, entitling the movant to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).  "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)).  "A mere scintilla of proof . . . will not suffice to prevent summary judgment."  *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).

Importantly, "a court should not grant summary judgment 'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.'"  *Campbell v. Hewitt, Coleman & Assocs., Inc.*, 21 F.3d 52, 55 (4th Cir. 1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna Casualty & Sur. Co.*, 381 F.2d 245, 249 (4th Cir. 1967)).  Where the party bearing the burden of proving a claim or defense "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment against that party is likewise warranted.  *Celotex*, 477 U.S. at 322.

"Where, as here, cross motions for summary judgment are filed, a court must 'evaluate each party's motion on its own merits, taking care [in each instance] to draw all reasonable inferences against the party whose motion is under consideration.'" *Snyder ex rel. Snyder v. Montgomery Cnty. Pub. Sch.*, No. DKC 2008-1757, 2009 WL 3246579, at *5 (D. Md. Sept. 29, 2009) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).[2]

### B.      Analysis

The parties recognize, essentially, that the failure to pay Plaintiffs in January and February 2018 amounts to a clear violation of the federal and state wage-and-hour laws.  Further, the parties do not dispute that TSCG is indeed liable for those violations as Plaintiffs' employer.  *See* ECF Nos. 95-1 at 42–45; 101-1 at 21, 33; 101-16 at 17.  Accordingly, the parties' cross motions center on whether Harvey Cleary jointly employed Plaintiffs such that it faces liability alongside TSCG for violations of the FLSA and companion state statutes.  *See Alvarez-Soto v. B. Frank Joy, LLC*, 258 F. Supp. 3d 615, 631 (D. Md. 2017); *Newell v. Runnels*, 407 Md. 578, 649–50 (2009); Md. Lab & Empl. Code Ann. § 3-401(b) (definition of employer).

---

[2] Well after the cross motions for summary judgment had been fully briefed, Plaintiffs separately moved to "strike" portions of affidavits that accompany Harvey Cleary's motion. ECF No. 107.  Plaintiffs specifically ask this Court to strike certain lines of three affidavits as "redundant or irrelevant," "speculative," "lacking personal knowledge," or "contradicting" other testimony. ECF No. 107-1 at 1.  The Court views these challenges as far more appropriate for trial.  Moreover, none of the challenged testimony bears on whether sufficient evidence exists to permit the question of joint employer status to reach the jury. *Cf. Rohrbough v. Wyeth Laboratories, Inc.*, 916 F.2d 970, 975 (disregard of affidavit affirmed when deposition "contrast[ed] starkly" with affidavit).  On this robust record, the challenged statements simply do not move the needle on the propriety of summary judgment.  *See Hardin v. Belmont Textile Mach. Co.*, No. 3:05-CV-492-M, 2010 WL 2293406, at *4–5 (W.D. N.C. June 7, 2010) (denying motion to strike affidavit when testimony did not create a "genuine issue" of any kind); *Haught v. The Louis Berkman, LLC*, 377 F. Supp. 2d 543, 553 (N.D.W. Va. 2005) (denying motion to strike affidavit filed in response to summary judgment motion when statements did not "serve as to the crux" of claims at issue); *see also Int'l Longshoremen's Ass'n, S.S. Clerks Local 1624, AFL-CIO v. Virginia Intern. Terminals, Inc.*, 904 F. Supp. 500, 504 (E.D. Va. 1995) (denying motion to strike as improper method to challenge reply brief and when challenged statements were "irrelevant to the determination of this summary judgment motion.").

The law recognizes that an employee may have more than one employer at any given time. *Jacobson v. Comcast Corp.*, 740 F. Supp. 2d 683, 688 (D. Md. 2010) (citing *Schultz v. Capital Intern. Sec., Inc.*, 466 F.3d 298, 306 (4th Cir. 2006)). Where, as here, a plaintiff employee alleges that she was jointly employed by two companies, the trier of fact must look to the "real economic relationship" between the putative joint employers. *See, e.g.*, *Newell*, 407 Md. at 650; *cf. Gionfriddo v. Jason Zink, LLC*, 769 F. Supp. 2d 880, 890 (D. Md. 2011) (quoting *Schultz*, 466 F.3d at 304). Six non-exhaustive factors guide this analysis: (1) the shared control or supervision of the employee directly or indirectly, (2) authority over terms and conditions of employment, (3) degree of permanency and duration of the joint relationship, (4) whether through shared management one joint employer controls the other, (5) whether work is performed on premises owned or controlled by one or more putative joint employers, and (6) the extent of shared responsibilities for payroll, facilities, equipment, tools and materials necessary to complete the  work. *Salinas v. Com. Interior, Inc.*, 848 F.3d 125, 141 (4th Cir. 2017). This inquiry is necessarily fact intensive and "based upon the circumstances of the whole activity." *Id.* at 142. When considering these factors as applied to this case, the question of joint employment cannot be resolved for either party at summary judgment.

Most plainly, record evidence points in both directions on whether Harvey Cleary "jointly directed, supervised, and controlled" Plaintiffs' work. *Salinas*, 848 F.3d at 146. Plaintiffs highlight that Cole had been "on site daily to supervise and manage the work performed by TSCG and the other subcontractors." ECF No. 95-1 at 11. Cole's involvement, say Plaintiffs, stands in stark contrast to the named TSCG supervisor, Perrone, who had reviewed Plaintiffs' work on very few occasions. ECF No. 100-11 at 7. Cole also held weekly "safety meetings" and regular foreman's meetings on site. ECF No. 100-12 at 8. Indeed, Cole described

the meetings as "like adult daycare. Sometimes I have to herd these guys in a line."  *Id.* at 10.
Cole also identified defects in the work for any given week, reviewed work schedules, and
walked through the site daily.  *Id.* at 10–13.  And it was Cole who would give Plaintiffs daily
instructions, request work overtime or weekend hours, or redo tasks that were not completed to
his satisfaction.  ECF Nos. 95-18 at 3 (Cole "regularly communicated" to Plaintiff and coworkers
what tasks should be redone); 95-17 at 3 (same); 101-13 at 8 (Cole instructed where to do
caulking); 95-19 at 4 (stating Cole required Plaintiffs to work late and on weekends); 101-11 at 8
(Cole directly instructed workers to construct a temporary office on site).

Similarly, Harvey Cleary kept track of Plaintiffs through "stickers" with the Harvey
Cleary logo and unique identifying number corresponding to the worker and subcontractor.  ECF
No. 101-11 at 15–16.  Several Plaintiffs also received Harvey Cleary security badges.  ECF No.
95-10; 95-22 at 3–4; 95-16 at 3.  From this, Plaintiffs argue that Harvey Cleary "went beyond
double-checking to verify that the task was done properly" to tip this factor in favor of joint
employment.  *Salinas*, 848 F.3d at 148 (quoting *Moreau v. Air France*, 356 F.3d 942, 951 (9th
Cir. 2004)) (alternations and quotations omitted).

Harvey Cleary, on the other hand, marshals sufficient evidence to make the question of
joint control and supervision a fair fight for trial.  ECF No. 101-1 at 25–26.  In contrast to
Plaintiffs' descriptions, Cole attests that he acted as a "liaison" between Garcia, who actually
delegated work and duties to Plaintiffs, and Harvey Cleary as the contractor.  ECF No. 101-12 at
9.  Cole also notes that the TSCG foremen—not he—set the lunch breaks, instructed employees
to correct sloppy work, and otherwise directed the daily progress of their portions of the Project.
*Id.* at 9, 13–14.  Moreover, Plaintiffs agree that Garcia, not Cole, acted as their direct supervisor.
ECF Nos. 101-14 at 5–6; 101-15 at 11; 101-11 at 11.  This structure is also consistent with the

Subcontract's terms, leaving it to TSCG to "at all times conduct, direct, and control its employees." ECF No. 101-6 at 11–12.   As to the hardhat stickers, Harvey Cleary does not dispute that they existed, but asserts they were mere "safety orientation stickers" given to everyone, even the client, after completing the safety orientation.  ECF No. 100-3 at 23.  From this record, the Court cannot conclude as a matter of law whether Harvey Cleary directed, supervised, and controlled Plaintiffs' work alongside TSCG.

Similarly, evidence points in both directions as to the extent of Harvey Cleary's control over Plaintiffs' terms and conditions of employment.  While Cole disputes that he set the hours required of workers, he also testified that he expected all workers, including Plaintiffs, to start at 6:00 a.m. and communicated that expectation to Plaintiffs through the foremen.  ECF No. 95-9 at 5.  Further, as Cole confirmed, no Plaintiff could be on site without a Harvey Cleary representative present.  *Id.* at 4.  Also, the Subcontract allowed Harvey Cleary to "dismiss" employees at will and permanently exclude them from "any part of the Project," ECF Nos. 100-6 at 2; 95-4 at 50.  Yet the record also demonstrates that TSCG bore ultimate responsibility for hiring Plaintiffs (ECF Nos. 101-14 at 5; 101-13 at 10); set the hourly rate of compensation and issued paychecks (ECF Nos. 101-16 at 93; 95-45); and controlled scheduling and breaks throughout the workday.  ECF No. 101-12 at 13 (lunch breaks "up to the subcontractors"), 6 (foreman "delegates manpower").  The record evidence simply stands in sharp conflict on this factor.

The same can be said for the remaining pertinent *Salinas* factors.  As to duration of the relationship between TSCG and Harvey Cleary, the two corporations worked on this Project for about five months and had only one other project together.  *See* ECF No. 101-6; 101-5 ¶¶ 30–31. This alone suggests the corporations had operated quite separately from each other.  But at the

same time, only two projects, this and one other, generated the majority of TSCG's revenue. ECF No. 95-37. Given the extent of TSCG's financial dependence on the outcome of this Project, it stands to reason that TSCG would cede control of the workforce to Harvey Cleary. *See Young v. Act Fast Delivery of West Virginia, Inc.*, No. 5:16-cv-09788, 2018 WL 279996, at * 7 (S.D. W.Va. Jan. 3, 2018) (employer's dependency on the other for majority of its business weighed in favor of finding joint employer relationship).

Last, as to level of shared responsibility for proving payroll and equipment for Plaintiffs to complete the work, Harvey Cleary predictably highlights all that it did not provide. ECF No. 101-1 at 29–31. Plaintiffs rejoin that the corporation had a joint payment agreement with TSCG for payments to the materials supplier for the Project, and Harvey Cleary's involvement in setting a biweekly pay schedule illustrates the shared responsibility in that regard. ECF No. 95-1 at 37.

In sum, and considering the relevant *Salinas* factors, the record does not allow summary judgment for either party. "The circumstances of the whole activity" between TSCG and Harvey Cleary as to Plaintiffs' work compels that the question of joint employment status be put to the jury. *Salinas*, 848 F.3d at 142. The cross motions are both denied.

## III. Default Judgment Against TSCG

TSCG has not participated in this action since March 10, 2021 and has been in default since July 19, 2021. ECF No. 97. Plaintiffs now seek default judgment against TSCG on liability and damages. Rule 55(a) provides that default judgment is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). Although courts maintain "a strong policy that cases be decided on the merits," *United States v. Schaffer Equip.*

*Co.*, 11 F.3d 450, 453 (4th Cir. 1993), the Court may exercise its discretion in granting default judgment when the "adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

When considering the propriety of default judgment, the Court takes as true the well-pleaded factual allegations of the complaint, other than those pertaining to damages. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *see* Fed. R. Civ. P. 8(b)(6) ("An allegation — other than one relating to the amount of damages — is admitted if a responsive pleading is required and the allegation is not denied."). The Court applies the pleading standards announced in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), in the context of default judgments. *See Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 544 (D. Md. 2011). A complaint that avers bare legal conclusions or "naked assertion[s] devoid of further factual enhancement," is insufficient to award default judgment. *Russell v. Railey*, No. DKC 08-2468, 2012 WL 1190972, at *3 (D. Md. Apr. 9, 2012) (quoting *Iqbal*, 556 U.S. at 678); *see, e.g.*, *Balt. Line Handling Co.*, 771 F. Supp. 2d at 545 ("The record lacks any specific allegations of fact that 'show' why those conclusions are warranted.").

If the complaint avers sufficient facts to find liability, the Court next turns to damages. *See Ryan*, 253 F.3d at 780–81. Damages are circumscribed by that which is requested in the complaint. *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."). The damages request must be supported by evidence introduced either at a hearing or by affidavit or other records. *See* Fed. R. Civ. P. 54(c); *Lawbaugh*, 359 F. Supp. 2d at 422.

Where, as here, the plaintiff has sued more than one defendant, Rule 54(b) permits entry of final judgment as to one defendant if no "just reason" exists to delay that finding. Fed. R. Civ.

P. 54(b).  Importantly, such an order adjudicating "fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  *Id.*  Rule 54(b) is "applicable not only to situations of joint liability but to those where liability is joint and/or several."  *U.S. for Use of Hudson v. Peerless Ins. Co.*, 374 F.2d 942, 944 (4th Cir. 1967).  Thus, it makes sense that "default judgment cannot be entered against a subset of defendants charged with joint and/or several liability when claims remain pending against one or more defendants."  *Flores v. Env't Tr. Sol., Inc.*, No. PWG-15-3063, 2018 WL 2237127, at *4 (D. Md. May 16, 2018) (citing *Frow v. De La Vega*, 82 U.S. 552, 554 (1872)); *see also Grim v. Baltimore Police Dep't.*, No. ELH-18-3864, 2019 WL 5865561, at *30 (D. Md. Nov. 8, 2019)); *Mickerson v. Am. Brokers Conduit*, No. TDC-17-1106, 2018 WL 1083640, at *8 (D. Md. Feb. 28, 2018).

Plaintiffs seek judgment against TSCG on minimum wage and overtime claims under the FLSA, MWHL, MWPCL, and Maryland common law.  ECF No. 102.  Taking the Complaint facts as true, TSCG qualified as Plaintiffs' "employer" under the operative statutes.  TSCG hired Plaintiffs, set their hourly rates, directed their work, and issued their paychecks.  To the extent that Plaintiffs had employment records, they were maintained by TSCG.  ECF No. 1 ¶¶ 28, 29, 32–45, 47.  These facts establish that TSCG was Plaintiffs' "employer" under the FLSA, MWHL, and MWPCL.  *See* 29 U.S.C. § 203(d) (employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee"); Md. Code Ann., Lab. & Empl. § 3-401(b) (employer is "any person who acts directly or indirectly in the interest of another employer with an employee"); Md. Code. Ann., Lab. & Empl. §3-501(b) (employer is "any person who employs an individual in the State [of Maryland] or a successor of the person").

14

As to TSCG's failure to pay Plaintiffs, the Complaint facts are sufficient to establish liability. The FLSA and MWHL require employers to pay non-exempt employees minimum wage for all hours worked, and overtime pay of at least one and one-half times the regular wage for hours worked in excess of 40 hours per week. 29 U.S.C. §§ 206(a), 207(a); Md. Code Ann., Lab. & Empl. §§ 3-413(b), 3-415(a). Between January and February 2018, Plaintiffs worked from two to eight weeks, sometimes working over 40 hours per week, "without any compensation whatsoever." ECF No. 1 ¶ 68. Liability is thus clear. *See Mata v. G.O. Contractors Grp., Ltd.*, No. TDC-14-3287, 2015 WL 6674650, at *4 (D. Md. Oct. 29, 2015) (citing *Turner v. Hum. Genome Sci., Inc*., 292 F. Supp. 2d 738, 748 (D. Md. 2003)).

Plaintiffs also allege violations of the MWPCL. For this claim, liability is established where two weeks "have elapsed from the date on which the employer is required to have paid the wages." Md. Code Ann., Lab. & Empl. § 3-507.2(a). The MWPCL, however, "does not focus on 'the amount of wages payable but rather the duty to pay whatever wages are due on a regular basis and to pay all that is due following termination of the employment.'" *Gregori v. Mkt. St. Mgmt., LLC*, No. ELH-16-3853, 2018 WL 4679734, at *5 (D. Md. Sept. 28, 2018) (quoting *Friolo v. Frankel*, 373 Md. 501, 513 (2003)). From the Complaint facts, TSCG clearly violated the MWPCL. The Court will enter default judgment against TSCG as to this claim as well.[3]

---

[3] Plaintiffs also move for default judgment on the common law claims of promissory estoppel and quantum meruit. ECF No. 102-1 at 18. These claims were pleaded in the alternative, and Plaintiffs seek no additional or different damages arising from the common law causes of action. ECF No. 102-1 at 9. Accordingly, the Court declines to enter judgment as to them. *See, e.g.*, *Saiyed v. Archon, Inc*., No. 16-9530, 2020 WL 7334190, at *7 (D. N.J. Dec. 14, 2020) (declining to enter default judgment on quantum meruit count when Plaintiff was already entitled to default judgment on FLSA claim); *Cesario v. BNI Const., Inc*., No. 07 Civ. 8545 (LLS)(GWG), 2008 WL 5210209, at *4 n.2 (S.D.N.Y. Dec. 15, 2008) (declining to enter default judgment on quantum meruit and breach of contract claims when Plaintiff was already entitled to default judgment on FLSA and corresponding state law claims).

Damages at this juncture is a different matter.  Plaintiffs contend that a damages award against TSCG is "not relevant" to the claims against Harvey Cleary.  ECF No. 102-1 at 10 n.2.  The Court cannot agree.  If, as Plaintiffs argue, Harvey Cleary is found to be a joint employer, then Harvey Cleary is subject to joint and several liability for any resulting damages award.  Harvey Cleary stands ready to defend against the claims, including the quantum of damages.  Awarding damages as to TSCG, therefore, presents a real risk of inconsistent judgments.  *Frow*, 82 U.S. at 553.  To avoid this outcome, Court reserves on damages as to TSCG until the resolution of the claims against Harvey Cleary.  Plaintiffs may renew their motion as to damages against TSCG once claims against Harvey Cleary have proceeded to final judgment.

**IV.**      **Conclusion**

For the foregoing reasons, the cross motions for summary judgment are denied.  The motion for default judgment against TSCG is granted as to liability and denied without prejudice as to damages.  A separate order follows.


 3/21/2022                                          ____/s/_____
Date                                                  Paula Xinis
                                                       United States District Judge

16