## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Southern Division)

| | |
|---|---|
| **ANGELLA AGUILAR, et al.** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **No.  8:18-cv-03953** |
| **v.** ) | |
| ) | |
| **DAVID E. HARVEY BUILDERS, INC., et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

### Proposed Pretrial Order

Pursuant to Rule 16 of the Federal Rules of Civil Procedure, Local Rule 106, and the

Pretrial Scheduling Order (ECF No. 118), Plaintiffs, Defendant David E. Harvey Builders, Inc.

("Harvey-Cleary"), and Defendant Frank Marceron jointly submit this Proposed Pretrial Order.

**A. Brief Statement of Facts that Plaintiffs Propose to Prove, with a Listing of the Separate Legal Theories Relied Upon in Support of Each Claim**[1]

Through this suit, Plaintiffs seek unpaid wages and damages from Defendants Harvey-

Cleary, TSCG Drywall & Painting LLC and The Subcontractors Gateway, Inc. (collectively

"TSCG")[2], and Frank Marceron (with TSCG, "the TSCG Defendants") under the Fair Labor

Standards Act ("FLSA"), Maryland Wage and Hour Law ("MWHL") and Maryland Wage

Payment and Collection Law ("MWPCL").

---

[1] Given the length of this proposed joint pretrial order, Plaintiffs appreciate that the Court may desire further clarification as to their efforts to prepare it, as the party with the obligation to initiate that process under Local Rule 106. If that is so, Plaintiffs would be happy to provide further information at the pretrial conference and/or present the Parties' email communications for review *in camera*.

[2] This Court has previously granted Plaintiffs' Motion for Default Judgment against TSCG as to liability, while deferring the determination of the amount of that judgment to this trial. ECF Nos. 112, 113.

Plaintiffs contend that Harvey-Cleary is liable for Plaintiffs' unpaid wages and damages as a joint employer under the FLSA and its state analogs, the MWHL and MWPCL,[3] pursuant to the six-factor joint employment standard articulated in *Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125, 141 (4th Cir. 2017). Harvey-Cleary was the general contractor on a Gold's Gym construction project in Maryland (the "Project") and subcontracted with TSCG to perform drywall installation. TSCG had only one other subcontract at the time, such that more than half its revenue came from Harvey-Cleary. Harvey-Cleary prepared its written subcontract with TSCG. This subcontract prohibited TSCG from employing any worker to whom Harvey-Cleary objected; authorized Harvey-Cleary to dismiss any TSCG employee from employment on the Project; gave Harvey-Cleary the power to pay TSCG's employees directly; entitled Harvey-Clearly to inspect and copy TSCG's payroll records; directed TSCG to supply enough manpower to assure timely completion of the Project; empowered Harvey-Cleary to supplement TSCG's workforce; and mandated that TSCG's crew comply with hours set by Harvey-Cleary's Project Superintendent Tim Cole. The subcontract also reflected two significant departures from Harvey-Cleary's usual terms and practice with other subcontractors. First, rather than requiring monthly progress payments against the full value of TSCG's subcontract price, the subcontract required biweekly payments from Harvey-Cleary to TSCG specifically for the purpose of compensating TSCG's labor (i.e., Plaintiffs). Second, Harvey-Cleary paid for TSCG's materials and equipment directly by issuing monthly joint checks to TSCG's material supplier. In addition, Harvey-Cleary directly furnished some materials and equipment necessary for TSCG's work, such as masonry frames, aluminum doors, and a forklift. TSCG hired Plaintiffs to work on the Project.

---

[3] The MWHL and MWPCL are Maryland state analogs of the FLSA. *McCoy v. Transdev Servs.*, No. DKC-19-2137, 2021 WL 962534, *1 (D. Md. March 15, 2021). Thus, the theories Plaintiffs articulate in support of their FLSA claims also support their claims under these state statutes.

Harvey-Cleary developed "look ahead schedules" that assigned TSCG specific tasks—e.g., "drop ceiling tile," "install bathroom accessories"—to complete on specific dates during each two- or three- week period during the Project. Harvey-Cleary required TSCG and Plaintiffs to follow these schedules. To ensure that they did, Superintendent Cole met daily with the foreman of TSCG's crew, Plaintiff Jacinto Garcia, to confirm and communicate the day's assigned activities. Mr. Garcia relayed those instructions in Spanish to his fellow crew members, including Plaintiffs. Superintendent Cole then walked the site "all day long" and took photos to evaluate, among other things, whether crews were in line with the schedule. If TSCG failed to comply, Harvey-Cleary directed it to increase the size of its crew and have workers work on weekends, and it threatened to supplement TSCG's workforce. Conversely, if Harvey-Cleary believed that TSCG was expending too many man-hours on a particular task, it directed TSCG to reduce the time spent to cut costs.

At the same time, Harvey-Cleary required TSCG to follow project drawings and documents which spelled out such precise details as the particular "screw pattern," "screw spacing," and "taping and spackling for joints" TSCG needed to apply. Harvey-Cleary's superintendent monitored TSCG's crew as members were working, providing instructions on the proper blocking, door placement, and where to install accessories like lockers. If work did not meet the prescribed specifications or otherwise had to be redone, Harvey-Clearly would direct the work be redone. Harvey-Cleary ordered Plaintiffs, both directly and through Plaintiff Garcia, to redo work on various occasions, including re-paneling the sauna area, re-installing a ceiling grid, and re-doing caulking. Some work required TSCG workers to secure pre-authorization from Harvey-Cleary. For example, before performing work that emitted flame or sparks, Plaintiffs had to obtain a "hot work permit" from Superintendent Cole, through which he directed when and

3

where the work would be done. Further, Harvey-Cleary—in conjunction with the property owner and design team—directed TSCG to employ particular solutions to address construction challenges that arose in the field. TSCG did not have discretion to solve such problems on its own.

Harvey-Cleary controlled access to the worksite. Mr. Cole unlocked the site each morning and locked the site at the end of each day. TSCG did not have keys and its staff were not permitted to be on site unless a Harvey-Cleary representative was there. Harvey-Cleary also provided TSCG workers, including Plaintiffs, with badges labelled with Harvey-Cleary's name and with hardhat stickers with unique identifying numbers that the workers had to wear to get and sign into the site. In addition, Mr. Cole "dictate[d] start and finish" times for the workday. Each day, Plaintiffs had to sign in on Harvey-Cleary forms with their name and a Harvey-Cleary-assigned identifying number. Harvey-Cleary further required TSCG to submit daily reports listing how many crew members were working each day, their positions, the number of hours each worked, and the specific tasks performed, and maintained these documents in its company records.

Harvey-Cleary used its authority, as set forth in its subcontract with TSCG, to remove TSCG's workers from the Gold's Gym site for behavior it deemed improper. For example, Mr. Cole once ordered a TSCG worker to go home for the day for a perceived safety violation and threatened to remove the worker permanently—i.e., fire him—if he repeated his behavior. The decision to temporarily or permanently remove TSCG's direct employees from the Project rested with Mr. Cole, and TSCG could not overrule him.

Harvey-Cleary also had TSCG assign Plaintiffs to work on a separate project. On two occasions in January 2018, during the Gold's Gym construction, Harvey-Cleary's Project

Manager Mark Voce asked TSCG to assign its staff to work on another Harvey-Cleary project—the Raytheon War Room in Sterling, Virginia—with one day's notice. TSCG complied with both requests, sending Plaintiffs Antonio Martinez and Jose Antonio Torres to complete the work on the Raytheon project that Harvey-Cleary assigned. Mr. Voce spoke directly with Mr. Martinez to advise him and Mr. Torres of their assignment. He also supervised Mr. Martinez's and Mr. Torres's work at the Raytheon site, providing instruction for example, on the size of the bulkheads they were to install.

Plaintiffs were not paid any wages for the work they performed from the beginning of January 2018 through their respective dates of departure from the Project. Several complained to Harvey-Cleary Superintendent Cole and Project Manager Voce about the nonpayment. Mr. Cole and Mr. Voce offered various responses, including that Plaintiffs should keep working and Harvey-Cleary would ensure that they received the wages they were due. Harvey-Cleary personnel also learned that, in addition to failing to pay Plaintiffs, TSCG had not paid second-tier subcontractors TSCG had hired to perform some of the work under its subcontract. There was no difference in Harvey-Cleary's relationship with TSCG's second-tier subcontractors as compared to TSCG's direct employees, like Plaintiffs; in Harvey-Cleary's view, "they were all TSCG." However, unlike Plaintiffs, the second-tier subcontractors had at that time hired an attorney and threatened to file mechanic's liens, so Harvey-Cleary paid them. Harvey-Cleary's knowledge that Plaintiffs had been working without pay, its assurances that Plaintiffs would be paid, the documentary and testimonial evidence of the amount Plaintiffs' are owed (described in Part G below), and Harvey-Cleary's ultimate decision not to pay Plaintiffs while instead paying TSCG's second-tier subcontractors reflect the absence of any bona fide dispute over Plaintiffs' claims,

specifically "a legitimate dispute over the validity of the claim or the amount that is owing." *Admiral Mortg., Inc., v. Cooper*, 745 A.2d 1026, 1031 (Md. 2000).

Plaintiffs contend that Frank Marceron is liable for their unpaid wages and damages as an individual employer under the FLSA. *See Roman v. Guapos III, Inc.*, 970 F. Supp. 2d 407, 416 (D. Md. 2013). Mr. Marceron was the sole owner of TSCG during the period relevant to this suit and had operational control over the business and its daily functions. He had the power to hire and fire TSCG's direct employees, and he approved the hiring of all Plaintiffs. He determined all Plaintiffs' regular hourly rates, maintained records of Plaintiffs' time worked, and signed TSCG's paychecks to Plaintiffs although the only such checks issued during the relevant period were not negotiable. Mr. Marceron, and TSCG project manager Bob Perrone, repeatedly acknowledged that Plaintiffs had not been paid for their work on the Gold's Gym Project. Accordingly, there is no bona fide dispute over the validity of Plaintiffs' claims against Mr. Marceron, nor is there any dispute over the amount of such claims, as detailed in Part G below.

**B.  <u>Brief Statement of Facts that Defendant Frank Marceron Proposes to Prove, with a Listing of the Separate Legal Theories Relied Upon in Support of Each Claim</u>**

Some Plaintiffs all worked on a construction project for which Harvey Cleary was the general contractor,  Some Plaintiffs were paid nothing for weeks—,—of their work. Through this suit, Some  Plaintiffs seek unpaid wages and damages from Defendants Harvey-Cleary,  under the Fair Labor Standards Act ("FLSA"), Maryland Wage and Hour Law ("MWHL") and Maryland Wage Payment and Collection Law ("MWPCL").

Plaintiffs contend that Harvey-Cleary is liable for Plaintiffs' unpaid wages and damages as a joint employer under the FLSA and its state analogs, the MWHL and MWPCL,[4] pursuant to

---

[4] The MWHL and MWPCL are Maryland state analogs of the FLSA. *McCoy v. Transdev Servs.*, No. DKC-19-2137, 2021 WL 962534, *1 (D. Md. March 15, 2021). Thus, the theories Plaintiffs articulate in support of their FLSA claims also support their claims under these state statutes.

the six-factor joint employment standard articulated in *Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125, 141 (4th Cir. 2017). Harvey-Cleary was the general contractor on a Gold's Gym construction project in Maryland (the "Project") and subcontracted with TSCG to perform drywall installation. TSCG had Multiple other subcontracts at the time,. Harvey-Cleary prepared its written subcontract with TSCG. This subcontract prohibited TSCG from employing any worker to whom Harvey-Cleary objected; authorized Harvey-Cleary to dismiss any TSCG employee from employment on the Project; gave Harvey-Cleary the power to pay TSCG's employees directly; entitled Harvey-Clearly to inspect and copy TSCG's payroll records; directed TSCG to supply enough manpower to assure timely completion of the Project; empowered Harvey-Cleary to supplement TSCG's workforce; and mandated that TSCG's crew comply with hours set by Harvey-Cleary's Project Superintendent Tim Cole. The subcontract also reflected two significant departures from Harvey-Cleary's usual terms and practice with other subcontractors. First, rather than requiring monthly progress payments against the full value of TSCG's subcontract price, the subcontract required biweekly payments from Harvey-Cleary to TSCG specifically for the purpose of compensating TSCG's labor (i.e., Plaintiffs). Second, Harvey-Cleary paid for TSCG's materials and equipment directly by issuing monthly joint checks to TSCG's material supplier. In addition, Harvey-Cleary directly furnished some materials and equipment necessary for TSCG's work, such as masonry frames, aluminum doors, and a forklift. TSCG hired Plaintiffs to work on the Project. Also directed additional work not in the contract drawings .

Harvey-Cleary developed "look ahead schedules" that assigned TSCG specific tasks— e.g., "drop ceiling tile," "install bathroom accessories"—to complete on specific dates during each two- or three- week period during the Project. Harvey-Cleary required TSCG and Plaintiffs

to follow these schedules. To ensure that they did, Superintendent Cole met daily with the foreman of TSCG's crew, Plaintiff Jacinto Garcia, to confirm and communicate the day's assigned activities. Mr. Garcia relayed those instructions in Spanish to his fellow crew members, including Plaintiffs. Superintendent Cole then walked the site "all day long" and took photos to evaluate, among other things, whether crews were in line with the schedule. If TSCG failed to comply, Harvey-Cleary directed it to increase the size of its crew and have workers work on weekends, and it threatened to supplement TSCG's workforce. Conversely, if Harvey-Cleary believed that TSCG was expending too many man-hours on a particular task, it directed TSCG to reduce the time spent to cut costs.

At the same time, Harvey-Cleary required TSCG and Garcia to follow project drawings and documents which spelled out such precise details as the particular "screw pattern," "screw spacing," and "taping and spackling for joints" TSCG needed to apply. If work did not meet these specifications or otherwise had to be redone, Harvey-Clearly would direct the work be redone. Harvey-Cleary ordered Plaintiffs, both directly and through Plaintiff Garcia, to redo work on various occasions, including re-paneling the sauna area, re-installing a ceiling grid, and re-doing caulking which was extra work due to damages of other subcontractors . Some work required TSCG workers to secure pre-authorization from Harvey-Cleary. For example, before performing work that emitted flame or sparks, Plaintiffs had to obtain a "hot work permit" from Superintendent Cole, through which he directed when and where the work would be done. Further, Harvey-Cleary—in conjunction with the property owner and design team—directed TSCG and Garcia  to employ particular solutions to address construction challenges that arose in the field. TSCG did not have discretion to solve such problems on its own.

Harvey-Cleary controlled access to the worksite. Mr. Cole  and Eddie Marales the proejct Manager unlocked the site each morning and locked the site at the end of each day. TSCG did not have keys and its staff were not permitted to be on site unless a Harvey-Cleary representative was there. Harvey-Cleary also provided TSCG workers, including Plaintiffs, with badges labelled with Harvey-Cleary's name and hardhat stickers with unique identifying numbers that the workers had to wear to get onto the site. In addition, Mr. Cole "dictate[d] start and finish" times for the workday. Each day, Plaintiffs had to sign in on Harvey-Cleary forms with their name and a Harvey-Cleary-assigned identifying number. Harvey-Cleary further required TSCG to submit daily reports listing how many crew members were working each day, their positions, the number of hours each worked, and the specific tasks performed, and maintained these documents in its company records. Which only Garcia Maintained

Harvey-Cleary used its authority, as set forth in its subcontract with TSCG, to remove TSCG's workers from the Gold's Gym site for behavior it deemed improper. For example, Mr. Cole once ordered a TSCG worker to go home for the day for a perceived safety violation and threatened to remove the worker permanently—i.e., fire him—if he repeated his behavior. The decision to temporarily or permanently remove TSCG's direct employees from the Project rested with Mr. Cole, and TSCG could not overrule him.

Harvey-Cleary also had TSCG assign Plaintiffs to work on a separate project which was a time and materials job and not a contract. On two occasions in January 2018, during the Gold's Gym construction, Harvey-Cleary's Project Manager Mark Voce and Eddy Morales  asked TSCG to assign its staff to work on another Harvey-Cleary project—the Raytheon War Room in Sterling, Virginia—with one day's notice and to work under time and Material Basis and not a contract . TSCG complied with both requests, sending Plaintiffs Antonio Martinez and Jose

Antonio Torres to complete the work on the Raytheon project that Harvey-Cleary assigned daily tickets were produced by Garcia to verify time spent because it was a back charge to another subcontractor

Plaintiffs were paid the wages for the work they performed in late January due to the delay in Garcia turning over the work order tickets for payment. Checks were  already issues issued based on Garica  and then stopped due to over payment on the Raytheon project. The bank records of TSCG show no check was ever presetned because Garcia had know this was true . Because of this TSCG had to reissue  employees which was cashed in March 2018. from the beginning of January 2018 Golds Gym only through their respective dates of departure from the Project No payment was received because TSCG believed none of the Plaintiffs worked for them since Garcia Forwarded all release forms requested to be signed. Several Plantiffs  complained to Harvey-Cleary Superintendent Cole and Project Manager Voce and Eddy Morales  about the nonpayment -Marceron was never contacted because each Plantiff had conversations with Hary personnel securing that Harvery would be payint them  Mr. Cole and Mr. Voce and Eddy Morales  offered various responses, including that Plaintiffs should keep working and Harvey-Cleary would ensure that they received the wages they were due. This factual statement alone proves Mr. Marceron did not maliciously make any comment to keep working. I n fact with this admission should immediately dismiss Marceron in any personal capacity of this debt. It is also noted by each Plantiffs admission they knew Harvey was the payee and not TSCG OR  Marceron – Marceron is only invloved because it has to be due to the orginal contract was with TSCG nothing More .  Harvey-Cleary personnel also learned that, in addition to failing to pay Plaintiffs, TSCG had not paid for any wages or  second-tier  subs because Cleary was withldling Money claiming they was going to have to pay this our and their own internal records show requests

were mae by the exeutives to pay the plantiffs dircetly and Joe Lafonte demanded waivers of

liens for all workers and subcontractors  from TSCG.. TSCG Refused to get such infomration

because it couldn't Cleary had not paid them for services since DEC 2017  which TSCG  hired

Sub contractor labor  to perform some of the work under its subcontract TSCG denied this

request because it hadn't been paid anything to pay this cost ..Harvey Clearys Own

representatives admits they contacted their  office own Offfice - Harvey Cleary--- and requested

all personnel be paid for the services , Joseph Lafonte is the only person whom refused this  – In

fact Harvey Cleary had been altering TSCG invoices since Oct 2017  by Eddy Morales not

paying the additional work and materials – placing TSCG in a hardship There was no Reason  in

Harvey-Cleary's relationship with Plaintifss  or  second-tier subcontractors as compared in

Harvey-Cleary's view, "they were all TSCG." However, unlike Plaintiffs, the second-tier

subcontractors had at that time hired an attorney and threatened to file mechanic's liens, so

Harvey-Cleary paid them  TSCG after seeing Sub Contractors paid Hired same counsel from

same office to proceede against cleary . Harvey Cleary held over 100,000 dollars due to TSCG

for payment to the plaintiffs and produced the additional work changes- increasing TSCG

contract value . Harvey-Cleary's acknowledges that some  Plaintiffs had been working without

pay because Cleary was promisin payment to them , its assurances that Plaintiffs would be paid,

the documentary and testimonial evidence of the amount Plaintiffs' are owed (described in Part

G below), and Harvey-Cleary's ultimate decision not to pay Plaintiffs while instead paying

TSCG's second-tier subcontractors reflect the absence of any bona fide dispute over some

Plaintiffs' claims, specifically "a legitimate dispute over the validity of the claim or the amount

that is owing." *Admiral Mortg., Inc., v. Cooper*, 745 A.2d 1026, 1031 (Md. 2000). Harvey Cleary

was the only person or administration who benefited from SOME Plantiffs  performing the work

and Harvey Cleary received payment in Full from the Owner – Harvey Cleary under oath

admitted TSCG Drywall and Painting LLC  was never paid from Late December 2017 through

Feb 2018 . In fact admits the entire time while  some plaintiffs was on site Harvey Clearly

admits directing these people knowing they had to be paid but continued to keep these Plaintiffs

onsite – Harvey Cleary admits TSCG did not direct anyone after Jan 5 – Harvey Cleary and all

the Plaintiffs admit Frank Marceron had no control over payments after Jan 5 2018 which  was

not paid and also admit Mr. Marceron never once came to the site to direct anyone  , never once

talked to or promised anyone Payment , Never once benefited in any way . Did not receive any

money for any worker or work done from December 2017 through Feb 2018. Mr. Marceron

never talked to any employee it further admitted by all parties Mr. Marceron was never present at

any time discussing money owed to anyone, In fact its admitted Mark Voice was going to

Contact his office. Joseph Lafonte knowingly and willfully kept Some  plaintiffs from being paid

under the Maryland trust fund law Harvey Cleary and Joseph Lafonte should be  jointly liable for

all costs incurred and suffered  -While knowing the owner was paying Harvey Cleary for all their

services , Only Garcia was able to communicate to the plaintiffs – Because Mr. Marceron was

unable to speak Spanish and was never once involved in the project on a day to day activity .

never once came to the site never once attended a meeting , never once spoke on the phone to

anyone . Marceron was only sued Because Garcia asked for Marcerons help in getting paid and

Marceron expressed to Garcia that he warned Garcia not to return to this Job Marceron declined

to get invloved then in late sept Garcia left and became part of this suite  , But because Tim Cole

supposedly asked Garcia to finish the Job that Harvey Cleary had additional work for him and

his crew – mislead Garcia in returning to the site with his staff after Marceron directed him not to

and then got signed releases from Garcia for all personnel -Garcia admits this conversation under

oath in his deposition . Augilia Angela ,Blanco,Luis came from WEO -Willy and its made aware they may have worked on site and not been paid by WEO , which they enver became employees of TSCG .

Defendant  Frank Marceron is not liable for their unpaid wages and damages as an individual employer under the FLSA. *See Roman v. Guapos III, Inc.*, 970 F. Supp. 2d 407, 416 (D. Md. 2013). Mr. Marceron was the sole owner of TSCG but during the period relevant to this suit and had no operational control over the Daily Functions of this Golds Gym Project  only connection was TSCG Held the orginal contract , Some employees admit they worked for other firms under a different name and not Marceron but wasn't paid . From sept 2017 to Jan 5th .Marceron Did  have the power to hire and fire the  employees, Marceron  had no approval of the hiring of all Plaintiffs after Jan 5th   2018  – its even noted Garcia took it upon himself to bring on board members of subcontractor in late Jan 23 2018 that claimed to work For WEO - Willy  . Marceron  can not be held liable for WEO not paying  Angelia Luis,Blanco ,Marceron Had all plaintiffs sign a release form stating they no longer was employees of TSCG Drywall and Painting LLC prior to Jan 2018 and got a second release because Marceron did state he would search couself out for some of the plantiffs he knew personally and was working for TSCG again these plantiffs trusted Marceron because Marceron always paid them prior and after golds Gym .
- It Has been learned that Garcia was the common communication to all Plaintiffs and Mr. Marceron is not aware of that communication but Mr. Marceron had learned from each Plaintiff by admissions each Plaintiff relied on Eddy Morales , Mark Voice and Tim Cole  of Harvey Cleary to get paid this was under oath Mr. Frank Marceron never once made this statement and is only in this lawsuit as a harassment from the Public Justice Center to cloud the real issue. It is also understood  Plaintiffs  Could have received payment in 2018 but for some reason declined

acceptance –This case should have closed in 2018 and all parties could  have been paid in full ,
Marceron signed TSCG's paychecks to some Plaintiffs  prior to stopping the job on Jan 4th  and
hired some plantiffs after March 2018 and every person hired was paid in full such checks
issued. Angela Augliar Talked to Marceron on the MGM project in DC while Garcia was on site
about the Harvey Clear amounts owed , She told him WEO -Willy had never paid her , Marceron
assured Auglaria he would pay he and he did , she retuned 2 more times after that to work for
Mr. Marceron. TSCG project manager Bob Perrone, repeatedly acknowledged that  some
Plaintiffs had not been paid for their work on the Gold's Gym Project --Marceron and Perrone
repeatedly tried to help each plaintiff to get paid those people paid without making a claim on
site by TSCG but Joseph Lafonte refused  some Plaintiffs payment even after being paid for their
services on site . Accordingly, there is no bona fide Claim over the validity of some Plaintiffs'
claims against Mr. Marceron, There is a major dispute that Marceron  owes none of this  Money
by TSCG  and from a personal point of view -the only connection here is Marceron was owner of
TSCG for the original contract start , as detailed in Part G below. Each Plaintiff admits eddy
Morales and  Mark Voice and Tim Coles and as the evidence of Clears office  was leading
plaintiffs on for payment to keep personnel  onsite. Not Mr. Marceron admitting Payment was
held up in Dallas Texas Due to weather and Mr Voce held plaintiffs money and admits he told
his office to pay personnel , Mr. Marceron had no knowledge of these conversations and can not
be held liable for others actions which proves Marceron was not in control of payments to the
some Plaintiffs In depositions and answers to interrogatories every plaintiff admits they stayed
on site based on the promises of Harvey Cleary and those who could not speak English was
translated By Garcia on the Job site and never once by Marceron or any member of TSCG . Mr.
Marceron in a personal liability should be immediately Dismissed from this case as Mr.

Marceron did no Malicious to anyone – Mr. Marceron received no benefit whatsoever for plaintiffs working on the Golds Gym and even after paying some Plantiffs for the War room project didn't even benfit by getting paid on that job Because Joseph of Cleary had a judge let Cleary keep that money mased on a clause in the contract allowing moneys to be withheld if an issue arises on another Job , Cleary kept that money and to date 4-16-2023 has never paid that sum of money to anyone or evens showed where that money went but claimed is was to be used to pay employees they had on site. Ever plaintiff admits they did not speak to Mr. Marceron and every plaintiff contradicts their own statements by accusing Marceron through the only words told to them By Garcia and the reaction that Marceron did not want to get invloved because he warned Garcia and Anthony don't go back on Jan 5th when the retuned equipment from the Cleary Job – there is no evidence other than Garcia speaking to Plantiffs  that Marceron made any promises -But in fact on the Job the only promises made came from TIM Cole -Eddy Morales and Mark Voce plantiffs have made numerous mathcing accounts of things said and Clearry own executives over the Job made the same statements in emails and Clearys accounting team requested how to make out the checks to the plantiffs , but Joseph stopped it himself .These are  facts caming  from multiple Plaintiffs and Mark Voce and Tim Cole assuring them they would be paid if they continued work – Marceron had signed releases forms based On Garcia wishing to finish the Project because Marceron was stopping the Job Marceron could not have know Garcia would lie would not have know other people would sign for others , Marceron did not know the Some Plantiffs would sign without reading or claiming they didn't understand  this stance is a bios one only to serve as damage against Marceron  Marceron followed each legal step because he warned Garcia about Cleary due to a past relationship with Cleary on a prior job , Called the GWU Performing Arts center where Marceron had to file against Harvey for almost

15

the same thing But did get paid at a huge Loss this is why he forced cleary into a biweekly term - Garcia needed each employee to work and stay on site – Each employee stayed based on what Garcia told them and What  Eddy Morales and Tim Cole and Mark Voce Told them – Under federal law 608 a witness Character for truthfulness or untruthfulness Marceron should be dismissed as a personal party – not one plaintiff had Marceron directly tell them anything -not once person has anything from Marceron admitting he acted unprofessional -Not one plaintiff has evidence Marceron conducted himself in a malicious manner – Also under the Contradictory Rule all comments made about Marceron should be thrown out because all comments was made by only one person which was Garcia and no one else and ever plaintiff has no first hand knowledge other than what Garcia told them – Mark Voce cant even admit any conversation happened  with Marceron or the substance – But admits Plantiffs  of Harvey Cleary only gave them assurances of payment and then denied payments after the Job was complete – Marceron can not be held personally liable for someone elses actions when he has no control over what people say or do . Every deposition and every answers to Interrogatories state this in many ways . Not one person met with Marceron or Talked to Marceron – each Plaintiff stretches the facts Because Garcia alone told them these words  they stretch out to Marceron because they have to in order to tie in TSCG – but the facts remain Clear only Cleary made payment comments about Payments forth coming by their own admission every Plantiff knew TSCG nor Marceron was responsible for a payment to them . Each person who signed the forms acknowledge the release of employment the first time and the release of TSCG on the debt that TSCG was going to try and look into the avenues to get them paid -Because most employees worked for Marceron in the past and was paid in full and that Marceron told Garcia not to work for Harvey Cleary because they wasn't paying , but because Tim Cole -per Garcia made reference to possible future

employment Garcia alone gathered each person to stay on site not Marceron . Marceron did try and help each employee this is the only fault Marceron did and nothing else Case law attached LAW 608 and Contradictory Affidavit Rule .

  To better prove Mr. Marcerons case many Plantiffs  finished this job and came back to work For TSCG Drywall and Painting LLC and was paid in full for all services this is factual and undisputed –Augulia Angella whom the case is titled for came back to work for Marceron 3 times in 2018 and was paid , Its odd how someone cam claim Marceron defrauded them But continued to come to work for TSCG on multiple jobs these are facts that are undisputable. Many Plaintiffs had a history working with Marceron for years prior to this Job and every Plaintiff was paid in full for every job .–SOME  plaintiffs worked on 4 other projects after this Golds gym all was paid in full , This action against Marceron is a result of Marceron telling Garcia and others he did not wish to get involved in the Harvey-Cleary matter because he warned Garcia he was subjected to not get paid .

  **C.**  [5] **Brief Statement of Facts that Defendant David E. Harvey Builders, Inc. d/b/a Harvey-Cleary Builders Will Prove or Rely Upon, Including Legal Theories in Support of Its Defenses**

  David E. Harvey Builders, Inc. d/b/a Harvey-Cleary Builders ("Harvey-Cleary") is a respected general contractor involved in construction projects throughout the country. This case involves one of Harvey-Cleary's former projects in Riverdale, Maryland, in which Harvey-Cleary contracted with the owner entity of Gold's Gym for the simple tenant buildout of a new gym (the "Project"). To assist in the tenant buildout, Harvey-Cleary contracted with various subcontractors to perform work on the premises. One of these subcontractors was TSCG, Inc. ("TSCG"), an entity

---

[5] Harvey-Cleary notes that not all of Section B above and Section G(2) further below were written by Mr. Marceron as he inserted his comments directly into the sections by Plaintiffs and Plaintiffs' counsel rendered Sections B and G(2) as Mr. Marceron's statement instead of separating his comments.

owned by Defendant Frank Marceron, which was contracted to perform certain drywall work on the Project (the "Subcontract"). To perform its scope of work, TSCG directly hired several laborers, including Plaintiffs, to perform work on the Project. Some of these Plaintiffs had an existing relationship with TSCG and/or Mr. Marceron before the Gold's Gym Project and at least some Plaintiffs continued working for TSCG and/or Mr. Marceron after the Gold's Gym Project despite claiming in this lawsuit that TSCG and/or Mr. Marceron did not pay them for their work on the Gold's Gym Project. Plaintiffs claim they are owed wages from TSCG, Mr. Marceron, and Harvey-Cleary as alleged joint employers.

There is no dispute that Harvey-Cleary was not Plaintiffs' employer under the traditional employer-employee relationship as Harvey-Cleary never, *inter alia*, directly hired or directly paid Plaintiffs. Plaintiffs' case rests on the legal fiction that by simply being the general contractor on the Gold's Gym Project, Harvey-Cleary is obligated to pay the wages of all its subcontractors' employees even where Harvey-Cleary fully paid (and, indeed, overpaid) its subcontractor, TSCG, which was required to pay its employees. A judgment against Harvey-Cleary in this case would, in effect, mean Harvey-Cleary has to pay at least twice for TSCG's labor on the Project. Such extension is incongruous to the intent of the federal and state statutes since it would indeed be a slippery slope of punishing any general contractor that fulfilled its financial obligations to its subcontractor but, nonetheless, requiring it to pay wages of the subcontractor employees.[6] In the

---

[6] Indeed, if Harvey-Cleary is determined to be a joint employer of Plaintiffs, Plaintiff Garcia should also be considered a joint employer of Plaintiffs as, *inter alia*, Plaintiff Garcia signed documents as a TSCG "supervisor," he admitted he was Plaintiffs' supervisor, Plaintiffs considered him their supervisor, he repeatedly provided instructions to Plaintiffs, he recorded and maintained Plaintiffs' work time, he was the intermediary between Plaintiffs and TSCG personnel, he held onto Plaintiffs' allegedly non-negotiable paychecks, and Plaintiffs "would always follow" him on and onto multiple projects.

18

present case, there is abundant evidence indicating that Harvey-Cleary was not the joint employer of any of the Plaintiffs on the Project. There is also clear evidence disputing the accuracy of Plaintiffs' proposed timesheets.

**1.  *Salinas* is easily distinguishable from this instant case.**

Plaintiffs' case rests largely on *Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125 (4th Cir. 2017). As a result of Plaintiffs' reliance on *Salinas* in the prosecution of their claims, it necessarily follows that distinguishing the case from the present dispute means Harvey-Cleary has established that Plaintiffs failed to show joint employment by Harvey-Cleary. In *Salinas*, the Fourth Circuit directed its district courts to consider six factors that are not present here. 848 F.3d at 141-42.

**a.  Harvey-Cleary and TSCG did not jointly determine, share, or allocate the power to direct, control, and supervise Plaintiffs.**

In *Salinas*, the purported joint employer, Commercial Interiors, Inc. ("Commercial"), had multiple of its foremen continuously supervising the plaintiffs by providing one-on-one feedback on the methods and quality of the plaintiffs' work and compliance with safety protocols, and further required the plaintiffs to redo work Commercial found deficient. *Id*. at 130 & 146. The Fourth Circuit considered these facts *in conjunction with* the fact that Commercial also required the plaintiffs to hold themselves out as Commercial employees by providing the plaintiffs and the subcontractor supervisors with Commercial-branded clothing and safety equipment. *Id*. at 147. None of these facts occurred in the present case.

Harvey-Cleary's presence was not one-on-one, handholding supervision as done by Commercial. Harvey-Cleary's involvement with supervision was the standard general contractor-subcontractor relationship under which Harvey-Cleary managed, at a high-level, the subcontractor entities—not the subcontractor entities' individual laborers. The *Salinas* court recognized that "***an***

19

*entity does not become a joint employer by engaging in the oversight necessary to ensure that a contractor's services meet contractual standards of quality and timeliness*." 848 F.3d at 148 (emphasis added). Indeed, "*indirect supervision or control…to ensure compliance with various safety and security regulations" does not indicate joint employment when done "to verify that the task was done properly*." *See Salinas*, 848 F.3d at 148 (emphasis added) (quoting *Moreau v. Air France*, 356 F.3d 942, 951 (9th Cir. 2004)). Importantly, Harvey-Cleary's Project Manager, Mark Voce, and Vice President, Joseph LaFonte, never supervised Plaintiffs' work; Plaintiffs' draw their arguments on supervision only from Superintendent Timothy Cole's presence onsite. Mr. Cole's primary role on the Gold's Gym Project was as Harvey-Cleary's superintendent mainly responsible for safety, a field in which he has significant training, including relating to job safety orientation at the start of the Project as well as Hot Work Permits for safety.

Focusing on Mr. Cole, as Plaintiffs do, it is clear that Mr. Cole's function was primarily to ensure safety and occasionally to see if the subcontractors' foremen were upholding their schedules as the subcontractors established in their foremen meetings. Mr. Cole also did not mandate start and end times of workdays for Plaintiffs and did not dictate when they took their lunch breaks, either. In contrast to Mr. Cole's presence on site, Commercial had more than one of its foremen continuously supervising and providing the *Salinas* plaintiffs with "one-on-one instruction." 848 F.3d at 130 & 148. Regardless, Mr. Cole's actions—even if classified as "supervision," which they are not—would have been to meet the general timeframe set by the Owner, and "*supervision with respect to contractual warranties of quality and time of delivery has no bearing on the joint employment inquiry, as such supervision is perfectly consistent with a typical, legitimate subcontracting arrangement*." *See Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 75 (2d Cir. 2003); *see Salinas*, 848 F.3d at 148 (quoting Zheng, 355 F.3d at 75). Therefore, whatever

rudimentary checks that Cole underwent do not indicate Harvey-Cleary's control and supervision over Plaintiffs tantamount to finding joint employment. Indeed, TSCG bore the responsibility to supervise its workers under the Subcontract.[7]

Contrary to Plaintiffs' contention, Harvey-Cleary did not instruct any Plaintiff to redo work, including in the sauna. Harvey-Cleary did not approve such changes and, further, did not direct or control Plaintiffs by means of project shop drawings. Not only was TSCG required to supply its own drawings, TSCG could request additional information for clarification on their task by submitting Requests for Information ("RFIs") to the Owner and design team, but, importantly, Harvey-Cleary did not track submissions of RFIs on an individual laborer basis.

### i. Harvey-Cleary did not provide tools, materials, or equipment to Plaintiffs.

In *Salinas*, Commercial had provided hardhats, tools, and materials directly to the plaintiffs. Harvey-Cleary did not provide such items to Plaintiffs at the Gold's Gym Project.

TSCG was responsible under the Subcontract to provide, *inter alia*, tools, materials, supplies, and equipment.[8] In contrast to the facts of *Salinas*, Mr. Cole testified in his deposition

---

[7] "It is acknowledged and agreed that the relationship between the General Contractor and the Subcontractor is that of an independent contractor. *It is the responsibility of the Subcontractor to hire and manage its own workforce*. While the General Contractor is vitally interested in the performance of the Subcontractor with respect to quality, safety, schedule adherence, etc., it is agreed that it is the responsibility of the Subcontractor to direct its own forces (labor, material, and equipment) and to ascertain that its work will, at all times, be in compliance with federal, state, and local (county, city) laws, rules, ordinances, and codes…. *Subcontractor will at all times, conduct, direct, and control its employees and work as an independent contractor* to be in complete compliance with federal and state safety standards…. The General Contractor maintains its right to have *the Subcontractor* remove and/or remedy any work and/or worker it identifies to be in violation of the aforementioned codes and ordinances." Subcontract, § 10(a) (emphasis added).

[8] "Subcontractor shall perform all Subcontract Work, and shall furnish and pay for all supervision, labor, materials, equipment, utilities, facilities, temporary facilities, tools, supplies and other

that Harvey-Cleary did not provide tools, material, or equipment to TSCG or its laborers. For example, wood, if not in TSCG's proposal, would be provided by another trade, such as the millworker. Other material, including access panels, were provided by TSCG's plumbing, electrical, and mechanical contractors. Mr. Cole further testified that the subcontractors were responsible for bringing their tools and safety gear to the Project site that they would store in their toolboxes, which Mr. Cole did not have keys to open. Whatever forklift may have been onsite may not have been provided by Harvey-Cleary, and it was certainly not there for any particular subcontractor's laborers since subcontractors already arranged with their suppliers to have materials delivered. Therefore, the use or presence of the forklift by a subcontractor cannot signify any subcontractor's laborer's employment with Harvey-Cleary, but, regardless, Plaintiffs never previously alleged that the forklift was present onsite for their use or that they ever used it.

Consistent with Mr. Cole's testimony, Plaintiffs testified that Harvey-Cleary did not provide them safety gear, such as hardhats and safety goggles, on the Gold's Gym Project. In fact, Plaintiffs, who possess years of experience in construction, testified that they also had the responsibility to bring their safety gear on other projects as well. While Plaintiffs were simply given a hardhat sticker (not the hardhats themselves), signifying that they, and others onsite, completed safety orientation, these stickers—in Plaintiffs' own words—are "normal" in the construction industry and are "for safety." Indeed, all workers for any subcontractor on the Project site obtained hardhat stickers containing unique identification numbers for safety purposes at the conclusion of safety orientation. Each number corresponded to the individual's contact information that would be referenced in event of a safety emergency or injury involving the

---

property and services, including without limitation shop drawings, samples, and submittals…."
Subcontract, § 3(a).

individual. The stickers did not signify that any of those individuals were employees of Harvey-Cleary. In fact, at least some Plaintiffs did not believe they were Harvey-Cleary employees.

### ii.  Harvey-Cleary did not provide clothing or facilities to Plaintiffs.

Unlike *Salinas* in which the plaintiffs were provided clothing in the form of vests and sweatshirts bearing Commercial's logo, Plaintiffs in this matter consistently testified that Harvey-Cleary never provided them clothing, including vests. *See* 848 F.3d at 130. Plaintiffs have stipulated to this fact as well.

Further unlike *Salinas* in which the plaintiffs were provided facilities in the form of housing, Harvey-Cleary indisputably did not provide housing to any of the Plaintiffs. Indeed, Plaintiff Torres, in over fourteen years of working in construction on many projects, was surprised at even the idea of ever receiving housing, which implies that providing housing is a very unique fact to *Salinas* that prompted the Fourth Circuit to find joint employment. Plaintiffs have stipulated that they did not receive housing from Harvey-Cleary.

Therefore, the significant facts of *Salinas* of the defendant providing clothing as well as housing that led the Court to find joint employment are entirely absent in the instant case.

### b.  Harvey-Cleary and TSCG did not jointly determine, share, or allocate the power to hire and fire Plaintiffs.

In *Salinas*, Commercial directed the plaintiffs to apply for direct employment with Commercial, Commercial directly hired the plaintiffs, Commercial threatened to fire at least one of the plaintiffs, Commercial instructed the plaintiffs to complete Commercial's timesheets, and Commercial directly paid the plaintiffs. *See* 848 F.3d at 141-42. All of these facts are absent here.

Harvey-Cleary did not determine the key terms and conditions for employment of any Plaintiff with TSCG, and Harvey-Cleary did not participate, in any way, in the hiring or firing of

(or threatening to hire or fire) any subcontractor's laborers, including Plaintiffs. Plaintiffs have not presented a single example of Harvey-Cleary hiring or firing any subcontractor's laborer.

An important distinction needs to be drawn, particularly in the construction context, as the standard is not whether the prospective joint employer *removed* the individual but whether it *fired* the individual. *See Salinas*, 848 F.3d at 141. Plaintiffs will attempt to rely on an instance when a Sunshine Plumbing laborer was removed from the Project site due to swearing or when the TSCG worker—who is not a Plaintiff in this action—left for the day. Importantly, Harvey-Cleary played absolutely no role in whether the individuals' employment ended. Harvey-Cleary does not remove any subcontractor worker but rather the subcontractor or the subcontractor's foreman makes the decision and, moreover, the subcontractor could even move the laborer to another project without firing him.

Further, Plaintiffs applied to work with TSCG, not necessarily to work for TSCG on the Gold's Gym Project. In addition, some Plaintiffs worked with Mr. Marceron prior to the Project, so the condition of their employment was not contingent on being on the Gold's Gym Project site, and, indeed, at least some Plaintiffs continued to work for TSCG and/or Mr. Marceron after the Gold's Gym Project concluded. Therefore, even if Plaintiffs were "removed" from the Project site (which they were not), Plaintiffs' "removal" from the Project site would not be the equivalent of termination or even a change in conditions of employment of Plaintiffs with TSCG as TSCG could place them on another site. Even if Harvey-Cleary had the power to remove or fire, it clearly did not actually remove or fire any Plaintiff, and "unexercised authority is insufficient to establish liability as an employer." *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1161 (11th Cir. 2008).

> **c. Harvey-Cleary did not maintain Plaintiffs' employment records and did not handle Plaintiffs' payroll or insurance as no Plaintiff directly applied for employment with Harvey-Cleary and no Plaintiff was directly hired by Harvey-Cleary.**

In *Salinas*, Commercial required several of the plaintiffs to complete its employment application to work directly for Commercial; indeed, Commercial issued paychecks and provided insurance to the plaintiffs. *See* 848 F.3d at 130. The plaintiffs were also directed to fill out Commercial's timesheets bearing Commercial's logo. *Id*.

It is indisputable that Plaintiffs in the instant case never applied for employment with Harvey-Cleary. Not only did Mr. Voce and Mr. Cole testify that the Plaintiffs were not hired by Harvey-Cleary, but Plaintiffs also testified at depositions that they never applied to work for, and were never directly hired by, Harvey-Cleary. Harvey-Cleary also never maintained Plaintiffs' personnel records, tax records, or insurance records, and never recorded their individual hours or payrate. Therefore, Harvey-Cleary did not handle payroll or payroll taxes and did not provide any insurance to any Plaintiff since Plaintiffs were never directly hired by Harvey-Cleary contrary to the plaintiffs in *Salinas*.

In contrast to *Salinas*, no Plaintiff in this case filled out Harvey-Cleary timesheets and the only alleged timesheets they completed, through Plaintiff Garcia, were TSCG timesheets. Plaintiffs consistently admitted that they were never directly paid by Harvey-Cleary and even acknowledged that no Harvey-Cleary personnel promised that Harvey-Cleary specifically would directly pay any Plaintiff. Further, to the extent Plaintiffs attempt to rely on Harvey-Cleary's Joint Check Agreement ("JCA") for labor and materials of second-tier subcontractors to show joint employment, Plaintiffs will be unsuccessful. Harvey-Cleary's JCA for payment to TSCG's lower-tier labor subcontractor does not apply to Plaintiffs as they were not working for the lower-tier labor subcontractor but rather for TSCG—an entity that was directly paid by Harvey-Cleary.

Moreover, contrary to Plaintiffs' contention, the JCA was not a significant departure from Harvey-Cleary's practice with its other subcontractors or its work on other projects.

### d. Harvey-Cleary did not own or control the Project site.

The Fourth Circuit also considered whether the work was performed on premises owned or controlled by one or more of the putative joint employers. Harvey-Cleary did not own or control the Gold's Gym Project site and the Owner indisputably had ultimate authority relating to the Project site. The Owner could even make the drastic decision to completely shut down the Project.

Harvey-Cleary did not require Plaintiffs to be onsite at any given time, did not control their breaks, and did not provide transportation to and from the site. Plaintiffs did not need to show identification to enter the Project site, either. Mr. Cole clearly testified that the subcontractor laborers came in when they wanted to and were responsible for coordinating their work with other trades, and that he did not require subcontractors to be on the site at a certain time since some preferred to start early while others preferred to start later in the day. Even if Mr. Cole suggested a time, these times would apply to the subcontractor entity; Mr. Cole did not establish a workday period for any individual laborer.

### e. Harvey-Cleary and TSCG did not have a common ownership interest.

The Fourth Circuit in *Salinas* also asked its district courts to consider whether one putative joint employer controlled, was controlled by, or was under common control with the other putative joint employer through shared management or direct or indirect ownership interest. *See* 848 F.3d at 141. It is uncontested that Harvey-Cleary and TSCG shared no direct or indirect ownership or shared management. The only relationship connecting Harvey-Cleary to TSCG was this Gold's Gym Subcontract for a finite period for a simple tenant buildout and the short, unrelated Raytheon

Subcontract worth only $3,256.73 that is completely irrelevant to Plaintiffs alleged unpaid wages for the Gold's Gym Project.

      **f.   Harvey-Cleary and TSCG worked on the Project for only a short period.**

      The Fourth Circuit in *Salinas* also recommended that their district courts consider, not just the direction and control or hiring and firing of the possible joint employee, but also "the degree of permanency and duration of the relationship between the putative joint employers." 848 F.3d at141. The defendants, Commercial and J.I., in *Salinas* did not have a common ownership interest, but the Court considered that they had a "longstanding business relationship [and] [e]ven after J.I. went out of business, Commercial continued its business relationship with the Ramirez brothers," who were the owners of J.I. 848 F.3d at 129 & 147.

      Unlike the defendants in *Salinas*, there was never a "longstanding business relationship" between Harvey-Cleary and TSCG or Mr. Marceron. As stated above, Harvey-Cleary's relationship with TSCG and Mr. Marceron only consisted of the short, unrelated Raytheon Project (which was for a few days during the Gold's Gym Project and worth only $3,256.73) and the Gold's Gym Subcontract (which was executed in October 2017 and concluded at the end of February 2018). Moreover, Plaintiffs are not claiming unpaid wages for the entire duration of TSCG's Subcontract, but rather just in the January to February 2018 period. *See* Complaint ¶¶ 55 & 68. In addition, Harvey-Cleary did not work with TSCG before or after the Gold's Gym Project. TSCG participated in several other projects, including some with Plaintiffs that never involved Harvey-Cleary. For these reasons, it is conclusive that Harvey-Cleary and TSCG's relationship was short-lived without any semblance of permanency.

      Simply because Harvey-Cleary's contract was with TSCG and that both parties negotiated the Subcontract from standard language does not mean Harvey-Cleary controlled TSCG's

operations. The Subcontract was only for TSCG's work on the Gold's Gym Project and no other project, including none of the many other projects in which TSCG participated. Furthermore, some of these other projects involved some of the Plaintiffs, despite claiming at that time that they were not paid by TSCG and/or Mr. Marceron for a certain period on the Gold's Gym Project, which shows that TSCG and Plaintiffs more related in their control of one another's operations rather than Harvey-Cleary. Therefore, undoubtedly, Harvey-Cleary did not control TSCG's operations.

As a result, the major and unique facts of *Salinas* summarized above that swayed the Court to find joint employment are not present in this case, so the Court should not find joint employment here.

**2.   Even more recent case law does not support joint employment in the instant case.**

In *McCoy v. Transdev Servs., Inc.*, CV DKC 19-2137, 2022 WL 951996 (D. Md. Mar. 30, 2022), the plaintiffs similarly alleged they were not paid wages and this Court analyzed the claims under the six *Salinas* factors. The facts of *McCoy* are not present here. In summary, Transdev (one of the putative joint employers) incorporated the plaintiffs entirely into its operation of one of its contracts. *See McCoy*, 2022 WL 951996 at *7. One of the plaintiffs applied to work with Transdev, which made a contingent employment offer to him and trained him as a Transdev driver. *See id.* at 8. Transdev also exercised its power to stop one of the plaintiffs from driving under the contract when he was observed driving on his cell phone and that plaintiff's directly employer, Davi, did actually terminate the plaintiff's employment. *See id.* These facts are quite different from the instant case. As described in detail above, Harvey-Cleary never pursued directly hiring any of the TSCG laborers and never exercised its power to remove any of the Plaintiffs, and TSCG never fired any of the Plaintiffs from employment with TSCG due to any recommendation by Harvey-Cleary.

Moreover, Transdev and Davi's business relationship lasted seven years, which included a loan by Transdev to Davi in the amount of $30,000. *See id*. Moreover, Transdev reimbursed Davi's expenses on workers' compensation insurance. *See id*. Transdev also provided Davi with office space and clocked in and out the plaintiffs in its own electronic system. *See id*. These facts are entirely absent from the instant case. As discussed above, Harvey-Cleary and TSCG had a brief contractual relationship lasting approximately only five months. Further, Harvey-Cleary never paid for TSCG's workers' compensation insurance, never provided any loan to TSCG, and never provided office spaces to TSCG. The *McCoy* plaintiffs' time was verifiable because they used an electronic/mechanical system that contemporaneously recorded their clock in and out times, whereas in the present case, Plaintiffs rely on handwritten records that cannot be verified as having been contemporaneously prepared during the respective workday (and contain further discrepancies described below).

As a result, even this recent opinion by this Court does not support a finding of joint employment as to Harvey-Cleary.

**3.  Plaintiffs' timesheets are not accurate.**

Even if the Court finds joint employment, there are significant discrepancies with Plaintiffs' timesheets that raises doubts regarding their authenticity and accuracy. Plaintiffs claim that they checked in daily with Harvey-Cleary by means of Job Safety Analysis ("JSAs") forms. However, these forms are not timesheets since, *inter alia*, none of the JSAs show the times Plaintiffs allegedly worked and, importantly, were completed by TSCG's foreman and supervisor, Plaintiff Garcia, as, for example, "Contractor and Supervisor: TSCG Jacinto Garcia."

It is indisputable that, when the subcontractor laborers who cleared safety training arrived onsite, they would check in with their subcontractor foreman, not Harvey-Cleary personnel. The

JSAs were not attendance sheets and were, as its name indicates, related to safety, including a checklist of emergency procedures and personal protective equipment. Mr. Cole would either ask the foreman if he completed the JSA or he would understand that the foreman completed it by seeing the JSA on the job safety clipboard, on which the foremen would leave the completed JSAs, but Mr. Cole did not review the JSAs in any detail. As discussed earlier, "***ensur[ing] compliance with various safety and security regulations" does not indicate joint employment when done "to verify that the task was done properly***." *See Salinas*, 848 F.3d at 148 (emphasis added) (quoting *Moreau*, 356 F.3d at 951).

Even momentarily putting aside the reason for the JSAs, if Plaintiffs wish to support the validity or accuracy of their days worked (as alleged in their TSCG timesheets) with Harvey-Cleary's JSAs, they utterly fail to do so. Firstly, the JSAs do not show any number of hours worked.

Secondly, there are days that Plaintiffs claim they worked that are not reflected in the JSAs. For example, Plaintiffs' timesheets allege that Plaintiff Wilson Panozo worked on the Project on January 5 and January 26, 2018, but the JSAs for these days unquestionably do not contain Panozo's name. In addition, Plaintiffs' timesheets allege that Plaintiffs Antonio Martinez, Jose Torres, and Feliciano Revelo worked on the Project on January 10, 2018, but the JSA for this day does not contain their names. Yet another example is Plaintiffs' allegation that Plaintiff Angella Aguilar worked on the Project on January 23-26, 2018, but the JSAs for these days do not contain her name.

Thirdly, the JSAs contain many other TSCG laborers' names that are not listed on the timesheets Plaintiffs produced when, presumably, all TSCG laborers (who Plaintiff Garcia supervised and completed the JSA as such) would be listed on the timesheets. *See, e.g.*, JSAs dated January 15 & 16 of 2018 (listing "Joel Gonzalez" and "Alfonso Ramirez," among other non-

Plaintiffs' names) & JSA dated January 17, 2018 (listing "Joel Gonzalez," "Alfonso Ramirez," "Mariela Murillo," among other non-Plaintiffs' names); ECF No. 95-38 at WPanozo013 (not listing "Joel Gonzalez," "Alfonso Ramirez," "Mariela Murillo," or the other non-Plaintiffs' names). Surely, it calls into question the authenticity of the timesheets when only Plaintiffs' names are listed on timesheets on which Plaintiff Garcia supposedly recorded all TSCG laborers' times and not just the precise eleven Plaintiffs in this lawsuit.

Finally, yet very importantly, there are absolutely no JSAs with Plaintiffs' or TSCG's names for any day whatsoever in February 2018. If Plaintiffs attempt to rely on Harvey-Cleary's Daily Logs to show their presence onsite, they will likewise be unsuccessful as the Daily Logs do not name any laborer and, as noted above, TSCG had other workers onsite who are not the Plaintiffs in this matter. These facts, among others, call into question the authenticity of the timesheets and, coupled with the fact that Plaintiff Garcia was provided blank copies of the TSCG timesheet forms, Harvey-Cleary's contention is that the timesheets are inaccurate and were not contemporaneously created during the Project.

### 4. Harvey-Cleary disputes Plaintiffs' attorneys' fees.

Prior to Plaintiffs' Brief Statement in this Pretrial Order, Plaintiffs have never alleged that they suffered financial hardship, including inability to pay rent and, at times, experiencing hunger. Harvey-Cleary objects to Plaintiffs' additional allegations on the eve of trial as Harvey-Cleary is prejudiced by, *inter alia*, its inability to address such allegations during discovery. Still, Harvey-Cleary—while disputing that it is Plaintiffs' joint employer—has consistently sympathized with Plaintiffs to the extent that they were allegedly not paid wages by TSCG for their alleged work on the Gold's Gym Project. As a result, Harvey-Cleary, in good faith, attempted to resolve the issue of Plaintiffs' wages prior to trial. However, trial remained as the only avenue to address Plaintiffs'

counsel excessive claimed fees, which has unreasonably amounted to degrees more than treble Plaintiffs' wages and even approximately the entire Subcontract amount.

As a result, if Harvey-Cleary is found liable to Plaintiffs in any respect, Harvey-Cleary will also dispute Plaintiffs' attorneys' fees, including to the extent the amount is unreasonable and to the extent that the amount relates to Plaintiffs' prosecution of its claims against TSCG and Mr. Marceron. Indeed, the Court has discretion in awarding attorneys' fees, even in the context of the FLSA, and may determine that the amount is $0. *See Burnley v. Short*, 730 F.2d 136, 141 (4th Cir. 1984) (stating, "The amount of the attorney's fees…is within the sound discretion of the trial court."); *Sahyers v. Prugh, Holliday & Karatinos, P.L.*, 560 F.3d 1241, 1245-46 (11th Cir. Fla. 2009) (denying FLSA attorneys' fees where counsel caused, among other things, significant waste of time and resources).

### D. Counterclaims, Crossclaims, or Third-Party Claims

#### 1. Plaintiffs' Statement as to any Counterclaims, Crossclaims, or Third-Party Claims

The TSCG Defendants filed a counterclaim against Plaintiff Jacinto Garcia, which was dismissed as to TSCG following its default in this case. ECF Nos. 44, 113. With respect to Mr. Marceron's remaining counterclaim against Mr. Garcia, the evidence will establish that Mr. Garcia did not hire the other Plaintiffs, set their wage rates, or issue or sign their paychecks. Rather, it was Mr. Marceron who had and exercised authority over these decisions. Plaintiffs take no position as to the cross-claims filed between TSCG and Harvey-Cleary.

Plaintiffs have previously voluntarily dismissed their claims against Darlene Marceron, who was named as a Defendant in the Complaint. ECF Nos. 87, 90.

#### 2. Defendant Frank Marceron's Statement as to any Counterclaims, Crossclaims, or Third-Party Claims

The TSCG Defendants filed a counterclaim against Plaintiff Jacinto Garcia, which was dismissed as to TSCG following its default in this case. ECF Nos. 44, 113. With respect to Mr. Merceron's remaining counterclaim against Mr. Garcia, and  Cleary  the evidence will establish that Mr.  Garcia did hire some of the Plaintiffs, and set their wage rates, if you take the time and do the hourly rates and the math you can clearly see evidence some employees were on site through Feb 2018 a month after TSCG Stopped work, but those Plantiffs  stayed on site By clearys Promises of Payment, even Augular-Blanco-Luis  theselves  admits they quit a subcontractor and came to work directly on Jan 23 2018 at the direction of Garcia and not Marceron based on this admission she worked for a period of time not know to TSCG or Marceron and would be owed By WEO-WILLY not anyone else  – they admit they  worked for a prior Sub WEO who was not paid by TSCG and who's husband also worked for WEO , she was promised only By Garcia and Not Marceron even the orginal hiring paperwork had never been submitted to TSCG or Marceron because their attorney has the orginals , there is no evidence what so ever that it was recived to TSCG . Furthermore Clear has disputes over the actual time based on the records of the Job – this in no way is any isuse ot TSCG -

The only reason Marceron is in this case is for Joint liability because TSCG Drywall and Painting LLC held the original contract – every plaintiff testified under oath in depositions Only Harvey Cleary personal promised payments when asked they even admitted this in answers to interrogatories and since then has never changed – only Harvey Cleary Personnel directed the Plaintiffs while on site – Mr. Marceron had no control over this , Garcia was the communication to each plaintiff -Marceron can not be held liable for conversations he was never apart of or had knowledge ,Garcia Testified under oath in the deposition that after Jan 5th he collected the time or each employee and turned it into Harvey Cleary backing up the claim some  plaintiff

acknowledges TSCG nor Marceron was paying for wages Garcia even testified he went to Harvey cleary personnally Multiple times for payments for many weeks and was told multiple times checks was being issued directly from Harvey Cleary not Marceron  , its under oath for each depositions – Sarah Haslipp under her deposition also testified that she did not receive any time cards from anyone related to that project from Jan 5 2018 . my accounting of the proejct shows no person paid on that job from January to March 2018 related to golds gym .  It is also known that the statue of limitations has expired and again Marceron personally should be immediately dismissed. It is also known that Mrs. Sarah Haslipp forged the signature of Mrs. Darlene Marceron and committed perjury under oath about Mrs. Darlene's Marceron signing documents, These reasons are only known By Mrs. Haslipp, But Marceron believes these statements  of perjury is due Because Haslipp was fired for drug sales to a tenant on the property and poor workmanship that caused her to be fired immediately.

Plaintiffs have previously voluntarily dismissed their claims against Darlene Marceron, who was named as a Defendant in the Complaint. ECF Nos. 87, 90. Because Plantifs knowlingly knew Sarah Haslipp was forging signatures for no reason at all , There was just no good reason to do this , she has commite perjury throughout her depostion as she was orginally hired by ACI Drywall Inc and blantantly lied under oath she had no clue what that company did ,  Plaintiffs have filed against Marceron for pure Harassment – Plaintiffs have sworn under oath they knowingly. Knew Marceron had no responsibility on issuing payments, They knowingly admitted talking to Harvey Cleary representatives and only those representatives promised payments .

**3. Defendant Harvey-Cleary's Statement as to Any Counterclaims, Crossclaims, or Third-Party Claims: Harvey-Cleary requests that the Court clarify whether default has been entered as to Harvey-Cleary's Crossclaim against TSCG.**

Harvey-Cleary is owed indemnity from TSCG under the Subcontract in the event Harvey-Cleary is damaged by TSCG's failure to comply with the Subcontract, including its alleged failure to pay its laborers. As a result, if a judgment is entered against Harvey-Cleary in this matter, Harvey-Cleary is owed indemnity by TSCG for any damages Harvey-Cleary would be forced to play to Plaintiffs.

On April 1, 2019. Harvey-Cleary filed a Crossclaim against TSCG that alleged, *inter alia*, that TSCG breached the Subcontract and that Harvey-Cleary is owed indemnity. *See* ECF No. 20. Due to TSCG's failure to retain counsel, on April 16, 2021, Harvey-Cleary moved for entry of default as to Harvey-Cleary's Crossclaim against TSCG and for dismissal of TSCG's Crossclaim against Harvey-Cleary ("Motion"). *See* ECF No. 86. On August 12, 2021, on motion by Plaintiffs, this Court entered default against TSCG as to Plaintiffs' claims against TSCG and granted Harvey-Cleary's Motion as to dismissal of TSCG's Crossclaim against Harvey-Cleary, but the Court denied as moot Harvey-Cleary's Motion for entry of default as to its Crossclaim against TSCG. *See* ECF No. 103.

Harvey-Cleary requests clarification of the ruling of mootness as to Harvey-Cleary's Motion, including whether Harvey-Cleary's Crossclaim against TSCG still lives or default may be entered for breach of contract and TSCG's duty to indemnify Harvey-Cleary, particularly considering that TSCG is prohibited from participating at trial as an unrepresented corporate party. Harvey-Cleary is entitled to indemnity from TSCG in event Harvey-Cleary is found liable to Plaintiffs.

**F.  Stipulations of Fact, or if the Parties Are Unable to Agree, Requested Stipulations of Fact**

The Parties stipulate to the following facts:

1. David E. Harvey Builders, Inc. d/b/a Harvey-Cleary Builders ("Harvey-Cleary") was the general contractor for the construction of a Gold's Gym fitness facility in Riverdale Maryland ("Gold's Gym Project") during all periods relevant to Plaintiffs' claims, as set forth in the Complaint ("the relevant period").

2. Harvey-Cleary and TSCG, Inc. ("TSCG") entered into a subcontract under which TSCG was to perform certain drywall installation and related work on the Gold's Gym Project (the "Subcontract").

3. Frank Marceron was the sole owner of TSCG during the relevant period.

In addition, each Party has requested many other stipulations that one or both of the other Parties has rejected. Attachment A contains a chart of each Party's requested stipulation, and each of the other Parties' responses.

### G. The Details of the Damages Claimed or Any Other Relief Sought as of the Date of the Pretrial Conference

#### 1. Plaintiffs' Statement as to the Damages Claimed or Any Other Pretrial Relief Sought as of the Date of the Pretrial Conference

Plaintiffs' contemporaneously created timesheets and testimony establish their dates and hours of work and the amount they earned but were not paid, more than meeting the requirement that unpaid wages be established as a matter of "just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946). This evidence is corroborated by evidence produced by Harvey-Cleary, including daily logs from the Gold's Gym project listing TSCG workers' dates and hours. Attachment B to this proposed pretrial order details Plaintiffs' calculation of their unpaid wages. By way of summary:

- Angella Aguilar is owed $3,168 in unpaid wages

- Luis Baires is owed $1,240 in unpaid wages

- Carlos Chavarria is owed $5,290 in unpaid wages

- Blanca Ferrer is owed $2,212 in unpaid wages

- Jacinto Garcia is owed $9,165 in unpaid wages

- Fabricio Marroquin is owed $4,494 in unpaid wages

- Antonio Martinez is owed $8,000 in unpaid wages

- Wilson Panozo is owed $1,137 in unpaid wages

- Jose Feliciano Revelo is owed $3,075 in unpaid wages

- Jose Antonio Torres is owed $7,750 in unpaid wages

- Fredy Veizaga Prado is owed $1,738 in unpaid wages

Plaintiffs' testimony will establish that they and their families suffered hardship as a result of not receiving pay for their work, including falling behind on rent and utility bills, facing phone and/or utility shutoffs, and experiencing hunger.

Because there is no bona fide dispute over the validity or amount of their claims, as detailed in Part A above, Plaintiffs should receive—in addition to their unpaid wages—double damages under the MWPCL. *See Admiral Mortg., Inc., v. Cooper*, 745 A.2d 1026, 1031 (Md. 2000). Alternatively, Plaintiffs are "automatically entitled to liquidated damages" equal to their unpaid wage under the FLSA, in the absence of "plain and substantial" proof by Defendants that the failure to pay wages was reasonable and in good faith. *Chao v. Self Pride, Inc.*, No. Civ. RDB-03-3409, 2005 WL 1400740, *11 (D. Md. June 14, 2005) (citing *Mayhew v. Wells*, 125 F.3d 216, 225 (4th Cir. 1997)); *see also* Md. Lab. & Empl. 3-427(a)(2) (liquidated damages under the MWHL). Plaintiffs also assert common law claims for promissory estoppel and quantum meruit, with damages equal to the amount of their unpaid wages, any additional compensatory damages (for the promissory estoppel count), and pre- and post-judgment interest.

37

Judgment, regardless of the statutory or common law basis and amount, should be granted in favor of Plaintiffs and jointly and severally against all Defendants, as joint employers and/or tortfeasors.

### 2. Defendant Frank Marceron's Statement as to the Damages Claimed or Any Other Pretrial Relief Sought as of the Date of the Pretrial Conference

Plaintiffs' contemporaneously created timesheets and testimony establish their dates and hours of work and the amount they earned but were not paid, not verified by Harvey Cleary's records and never submitted to TSCG not  meeting the requirement that unpaid wages be established as a matter of "just and reasonable inference." This evidence is corroborated by evidence produced by Harvey-Cleary, including daily logs from the Gold's Gym project listing workers' dates and hours. Attachment B to this proposed pretrial order details some  Plaintiffs' calculation of their unpaid wages. By way of summary: Each plaintiff and party admits TSCG Drywall and Painting LLC was never given this paperwork only Harvey Cleary was. Because each Plaintiff believe they wasn't working for TSCG at the time of damages .

- Angella Aguilar is owed $3,168 in unpaid wages

- Luis Baires is owed $1,240 in unpaid wages

- Carlos Chavarria is owed $5,290 in unpaid wages

- Blanca Ferrer is owed $2,212 in unpaid wages

- Jacinto Garcia is owed $9,165 in unpaid wages

- Fabricio Marroquin is owed $4,494 in unpaid wages

- Antonio Martinez is owed $8,000 in unpaid wages

- Wilson Panozo is owed $1,137 in unpaid wages

- Jose Feliciano Revelo is owed $3,075 in unpaid wages

- Jose Antonio Torres is owed $7,750 in unpaid wages

- Fredy Veizaga Prado is owed $1,738 in unpaid wages

Plaintiffs' testimony can not  establish that they and their families suffered hardship as a result of not receiving pay for their work, including falling behind on rent and utility bills, facing phone and/or utility shutoffs, and experiencing hunger. —There is no reason for this case to have continued other than build extreme legal costs unbearable to Marceron   and to force Marceron to defend a case that plaintiffs knowing  he should not be held liable for – Mr. Marceron did not go out of his way to create any Malicious  to anyone Marceron should receive damages because Marceron can show damages cause by the lies and misconceptions of all parties forcing him to be late on his mortgages obtain huge legal costs , having to fight a case in a chapter 7 bankruptcy causing even More damages and more cost Harvey Cleary and all Plantiffs should pay Marceron in excess of 100,000 dollars in damages and a quick release from this case  .  All Plaintiffs have caused un just harm to Marceron and his family for no reason at all. Its proven in all depositions Marceron had no control of the Golds gym project during the disputed time and had no control of the funds paid for the services of the plaintiffs – only Harvey Cleary benefited from plaintiffs work. Marceron should be granted full reimbursement of all legal costs and should be granted a judgement for all  dollars owed to  him personally and should be allowed to get a full uncontested release In the bankruptcy case caused by the harm of  plaintiffs. The only issue here is the possibility of joint liability on behave of TSCG  Based on an orginal Contract and that all . its well documented Harvey Cleary made promises of payment from the beginning to the end of the proejct starting from Jan 5 to the end , its this very reason some of or all of the plantiffs stayed on site to complete the Job .

Because there is a bona fide dispute over the validity or amount of their claims, as detailed in Part A above, Plaintiffs should receive—nothing from Marceron  but should receive

from Harvey Clear as its docmented Clear held them on site —and not double damages under the

MWPCL from Marceron   But maybe held liable from Harvey Cleary .. Because all employees

were able to be paid in full in 2018 because Harvery Cleary Had received full payment for the

Plaintiffs work by the owner and not TSCG - as promised by Harvey Cleary . Alternatively,

Plaintiffs are not automatically entitled to liquidated damages" equal to their unpaid wage under

the FLSA, in the absence of "plain and substantial" proof that only one Defendant Harvey Cleary

failed to pay wages  Marceron should be cleared because Marceron was reasonable and in good

faith.  Damages Should not be allowed because Defendant Harvey -Cleary offered payment in

full for all wages in 2018 after receiving full and Final payment from the property .Plaintiffs also

try to  assert common law claims for promissory estoppel and quantum meruit, with damages

equal to the amount of their unpaid wages, any additional compensatory damages (for the

promissory estoppel count), and pre- and post-judgment interest. Judgments should be denied but

Judgement should be entered against Harvey Clear for un paid legitimate wages earned By the

Job reports on records that Harvey Cleary Maintained not TSCG , regardless of the statutory or

common law basis and amount, should not  be granted in favor of Plaintiffs and  jointly and

severally against only one   Defendant  Harvey Cleary and Release Marceron in full , as

employer Harvey Cleary  and/or tortfeasors should be denied in full Marceron and Not Harvey

Cleary .

### H.  <u>Exhibit List</u>

The Parties' Exhibit List is enclosed as Attachment C. The Parties met and conferred as

to objections to these Exhibits extensively via email and by telephone on April 14, 2023. Despite

the Parties' efforts, however, many objections remain, as reflected in Attachment C.

**Defendant Frank Marceron's Statement as to the Exhibit List**

Please see each deposition from each plaintiff under oath Marceron made no promises and was not paid for any services from Jan 5th 2018 – Harvey Cleary's accounting forms show only Harvey Cleary received the benefit of each plaintiff and was paid in full .

Marceron should be allowed a complete Discharge under the Federal Bankruptcy Law because proof has been established in this case based on every Plaintiffs submission of interrogatories and depositions – that Every answer provided by every plaintiff admits Marceron never once tried to Maliciously do harm to anyone . Marceron is only problem was trusting in conversations not within his control but told to him By Garcia  – Marceron should not be held Liable to any Plaintiff based on promises made by Tim Cole Or Mark Voce and that Harvey Cleary benefited greatly by leading on the plaintiffs getting paid For  work performed and the owner Golds gym paid Harvey Cleary by proof of Harvey Cleary's accounting records , there was no need for any Plaintiff to suffer other than Joseph Lafonte purposely Not paying Plaintiffs and not paying each person working with proceeds Gathered by Defendant – Harvey Cleary admits through their own records they were the only party paid for these services and by their owner personnel admissions talked through emails about paying plaintiff for work on site  . By this action alone Marceron should be cleared from any personal claim made . The Time spent Marceron can not verify -Harvey Cleary also disputed this based on job reports they have , Marceron is just unaware of any time .

## I.  Witness List

Plaintiffs expect to call the following fact witnesses:

**Jacinto Garcia**[9]
c/o Monisha Cherayil and Lucy Zhou
Public Justice Center
201 N. Charles Street, Suite 1200

---

[9] Plaintiffs' Counsel will secure all Plaintiffs' presence for trial.

Baltimore, MD 21201

**Antonio Martinez**
c/o Monisha Cherayil and Lucy Zhou
Public Justice Center
201 N. Charles Street, Suite 1200
Baltimore, MD 21201

**Wilson Panozo**
c/o Monisha Cherayil and Lucy Zhou
Public Justice Center
201 N. Charles Street, Suite 1200
Baltimore, MD 21201

**Jose Antonio Torres**
c/o Monisha Cherayil and Lucy Zhou
Public Justice Center
201 N. Charles Street, Suite 1200
Baltimore, MD 21201

**Fabricio Marroquin**
c/o Monisha Cherayil and Lucy Zhou
Public Justice Center
201 N. Charles Street, Suite 1200
Baltimore, MD 21201

**Angella Aguilar**
c/o Monisha Cherayil and Lucy Zhou
Public Justice Center
201 N. Charles Street, Suite 1200
Baltimore, MD 21201

**Carlos Chavarria**
c/o Monisha Cherayil and Lucy Zhou
Public Justice Center
201 N. Charles Street, Suite 1200
Baltimore, MD 21201

**Luis Baires**
c/o Monisha Cherayil and Lucy Zhou
Public Justice Center
201 N. Charles Street, Suite 1200
Baltimore, MD 21201

**Jose Feliciano Revelo**
c/o Monisha Cherayil and Lucy Zhou

Public Justice Center
201 N. Charles Street, Suite 1200
Baltimore, MD 21201

**Blanca Ferrer**
c/o Monisha Cherayil and Lucy Zhou
Public Justice Center
201 N. Charles Street, Suite 1200
Baltimore, MD 21201

**Fredy Veizaga Prado**
c/o Monisha Cherayil and Lucy Zhou
Public Justice Center
201 N. Charles Street, Suite 1200
Baltimore, MD 21201

**Joe LaFonte**[10]
665 Wintergreen Drive
Purcellville, VA 20132

**Mark Voce**[11]
16254 Woodgrove Road
Round Hill, VA 20141

**Tim Cole**[12]
22140 Fleck Road
Three Springs, PA 17264

**Sarah Haislipp**
234 Jaguar Drive
Lothian, MD 20711

Defendant Frank Marceron expects to call the following fact witnesses:

**Darlene Marceron**
1740 Shadyside Drive
Edgewater Maryland

---

[10] Defendant Harvey-Cleary's Counsel has confirmed with Plaintiffs' Counsel that it will secure Mr. LaFonte's and Mr. Voce's presence for trial.

[11] Plaintiffs' counsel agreed to inform Harvey-Cleary's counsel of the date and approximate time that they will call Mr. Voce as a trial witness.

[12] Harvey-Cleary notes that Mr. Cole is unavailable for trial and will be located more than 100 miles from the Court.

**Eddy N Morales**
8130 Chelaberry Ct
Gaithersburg MD 20879

Defendant Harvey-Cleary reserves its right to call the following fact witnesses in addition to any of the above-named individuals:

**Frank Marceron**
1740 Shady Side Drive
Edgewater, MD 21037

Notwithstanding Mr. Cole's unavailability, Harvey-Cleary reserves its right to call any of the above-named individuals, including but not limited to, Plaintiffs, Joseph LaFonte, Mark Voce, and Frank Marceron, as witnesses at trial.

### K.  Deposition Designations

The Parties' deposition designations and counter-designations are enclosed as

Attachment D to this proposed pretrial order.

### L.  Any Other Pretrial Relief

#### 1.  Plaintiffs' Request for Pretrial Relief

Plaintiffs request permission to use leading questions in their direct examinations of Mr.

LaFonte, Mr. Voce, and Mr. Cole pursuant to Federal Rule of Evidence 611(c)(2), which allows

such questions "when a party calls . . . a witness identified with an adverse party." During the

period relevant to the claims at issue, Mr. LaFonte was a Harvey-Cleary Vice President, Mr.

Voce was a Harvey-Cleary Senior Project Manager, and Mr. Cole was a Harvey-Cleary

Superintendent, and all were identified in Harvey-Cleary's Responses to Plaintiffs' First Set of

Interrogatories as having knowledge of the Project and the facts in dispute in this suit. Further,

Harvey-Cleary designated Mr. LaFonte as its corporate representative under Federal Rule of

Civil Procedure 30(b)(6). Thus, all three witnesses are identified with Defendant Harvey-

44

Cleary—regardless of whether they are still employed there[13]—in that they played managerial roles and were involved in the events giving rise to this litigation. *See, e.g.*, *Doe By Watson v. Russell Cnty. Sch. Bd.*, No. 1:16CV00045, 2018 WL 1089277, at *2 (W.D. Va. Feb. 28, 2018) (permitting plaintiff to treat defendant's current and former employees "who had involvement with the events in question in the case" as adverse witnesses).

### 2.  Defendant Frank Marceron's Request for Pretrial Relief

Plaintiffs request permission to use leading questions in their direct examinations of Mr. LaFonte, Mr. Voce, and Mr. Cole and all Plaintiffs and Sarah Haslipp  Depositions pursuant to Federal Rule of Evidence 611(c)(2), which allows such questions "when a party calls . . . a witness identified with an adverse party." During the period relevant to the claims at issue, Mr. LaFonte was a Harvey-Cleary Vice President, Mr. Voce was a Harvey-Cleary Senior Project Manager, and Mr. Cole was a Harvey-Cleary Superintendent, and all were identified in Harvey-Cleary's Responses to Plaintiffs' First Set of Interrogatories as having knowledge of the Project and the facts in dispute in this suit. Further, Harvey-Cleary designated Mr. LaFonte as its corporate representative under Federal Rule of Civil Procedure 30(b)(6). Thus, all three witnesses are identified with Defendant Harvey-Cleary—regardless of whether they are still employed there[14]—in that they played managerial roles and were involved in the events giving rise to this litigation. *See, e.g.*, *Doe By Watson v. Russell Cnty. Sch. Bd.*, No. 1:16CV00045, 2018 WL 1089277, at *2 (W.D. Va. Feb. 28, 2018) (permitting plaintiff to treat defendant's current

---

[13] Harvey-Cleary's discovery responses indicated that Mr. LaFonte and Mr. Cole are still employed by Harvey-Cleary while Mr. Voce is not.

[14] Harvey-Cleary's discovery responses indicated that Mr. LaFonte and Mr. Cole are still employed by Harvey-Cleary while Mr. Voce is not.

and former employees "who had involvement with the events in question in the case" as adverse witnesses).

Under fer law all wage claims brought after 180 days or being due is dismissed under the bankruptcy lay Pursuant to 11 U.S.C. Section 547(a)(4)(A), each employee has admitted they went to Harvey Cleary for payment while working on the job site and admitted not once they came to Marceron until they finished the job and did not get paid , Ever plaintiff admits not once did anyone contact TSCG during the time frame of the wages owed – the only contact came at the job site with Harvey Cleary , under this law Pursuant to 11 U.S.C. Section 547(a)(4)(A), this case should be dismissed immediately , Marceron has a full discharge by the trustee and They plaintiffs counsel is merely causing harassment to try and cloud the issue for its client , this case was filed for demand 10 months after plaintiffs became due – Whether or not Marceron owned TSCG is not the issue the law is clear Pursuant to 11 U.S.C. Section 547(a)(4)(A), there was no intent and no malicious  done by Marceron , In fact the evidence of each plaintiff under oath confirm – Marceron never once made contact with the employees – That Garcia was the only person connected between the two and Garcia and others came back to work for Marceron for over 6 months and was paid in full for all services which also indicates , Garcia and others trusted Marceron and came back to work and got paid prior to golds Gym and after -I ask the judge to dismiss this case based on law of the Federal court system Pursuant to 11 U.S.C. Section 547(a)(4)(A),

11 U.S.C. § 523(a)(6) provides an exception for debts incurred through willful and malicious injury by the debtor to another entity or to the property of another entity. "The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a **deliberate or intentional injury**, not merely a deliberate or intentional act that leads to injury."

*Kawaauhau v. Geiger*, 523 U.S. 57, 62, 118 S. Ct. 974, 977 (1998).  "[D]ebts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." Id. at 64, 978. As stated by the Court of Appeals for the Fourth Circuit, "[Section] 523(a)(6) applies only to "acts done with actual intent to cause injury." Section 523(a)(6) is not satisfied by negligent, grossly negligent, or reckless conduct. Moreover, the mere fact that a debtor engaged in an intentional act does not necessarily mean that he acted willfully and maliciously for purposes of § 523(a)(6). "Nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Duncan v. Duncan (In re Duncan*), 448 F.3d 725, 728 (4th Cir.2006).

**the failure to pay a justly owed debt is not grounds for a finding of willful injury.** *In re Burns*, BK 10-73107 (Bankr. N.D. Ala. Feb. 27, 2013).  **Bankruptcy Courts have consistently held that ordinary wage and hour claims are not subject to 11 U.S.C. § 523(a)(6).**

### 3.   Defendant Harvey-Cleary's Request for Pretrial Relief

Harvey-Cleary requests that if the Court permits Plaintiffs to ask leading questions to the Harvey-Cleary witnesses, Harvey-Cleary likewise seeks to ask leading questions to Plaintiffs.

Respectfully submitted this 18th day of April, 2023,

/s/ Monisha Cherayil
Monisha Cherayil
Lucy Zhou
PUBLIC JUSTICE CENTER
201 North Charles Street, Suite 1200
Baltimore, MD 21201
(410) 625-9409 (Phone)
(410) 625-9423 (Fax)
cherayilm@publicjustice.org

zhoul@publicjustice.org

*Attorneys for Plaintiffs*

/s/ Frank Marceron
_____
Frank Marceron
1740 Shady Side Drive
Edgewater, MD 21037

*Pro Se Defendant*

/s/ Genevieve Sankar
_____
Jason C. Constantine
Genevieve Sankar
MOORE & LEE, LLP
1751 Pinnacle Drive, Suite 1100
McLean, VA  22102
(703) 506-2050 (Phone)
(703) 506-2051 (Fax)
j.constantine@mooreandlee.com
g.sankar@mooreandlee.com

*Attorneys for Defendant, David E. Harvey Builders, Inc.
dba Harvey-Cleary Builders*