IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | | |
|---|---|---|
| ANGELLA AGUILAR, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. GLS-18-03953 |
| | * | |
| DAVID E. HARVEY BUILDERS, INC., *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

****** 

## MEMORANDUM OPINION

Plaintiffs Angella Aguilar, Luis Baires, Carlos Chavarria, Blanca Ferrer, Jacinto Garcia Romero, Fabricio Marroquin, Antonio Martinez, Wilson Panozo, Freddy Verizaga Prado, Jose Feliciano Revelo, Jose Antonio Torres ("Plaintiffs") filed suit against: Defendant David E. Harvey Builders, Inc., d/b/a "Harvey-Cleary Builders" ("Defendant Harvey-Cleary" or "Harvey-Cleary"); Defendant Frank Marceron ("Defendant Marceron" or "Mr. Marceron"); The Subcontractors Gateway, Inc. ("TSCG") and TSCG Drywall and Painting, LLC (collectively "Defendant TSCG"); and Darlene Marceron, alleging violations of: the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*; the Maryland Wage and Hour Law ("MWHL"), Md. Code. Ann., Labor & Empl. §§ 3-401 *et seq.*; the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501 *et seq.*; and for promissory estoppel and quantum meruit. (ECF No. 1).[1]

After a five-day bench trial, the Court entered judgment in favor of the Plaintiffs against Defendants Marceron, TSCG, and Harvey-Cleary, finding them jointly and severally liable to

---

[1] The prior procedural history of this case, and the Court's findings of fact and conclusions of law, are outlined in sufficient detail in prior memorandum opinions. *See* ECF Nos. 112, 143, 168. In brief, in post-trial memorandum opinion, the Court found that Plaintiffs: (1) were employees under the FLSA, the MWHL, and the MWPCL; (2) were employed and jointly employed by the Defendants; and (3) were not paid all of the minimum and overtime wages that they earned. (ECF No. 168).

Plaintiffs for unpaid wages and liquidated damages in the amount of $93,450, plus reasonable attorneys' fees and costs. (ECF Nos. 168, 169).

Plaintiffs timely filed their motion for attorneys' fees and costs and memorandum in support thereto ("the Motion"). (ECF Nos. 170, 178).[2] Defendant Harvey-Cleary filed a response in opposition ("Opposition"), and Plaintiffs filed a Reply. (ECF Nos. 182-183). To date, neither Defendant Marceron nor Defendant TSCG has responded to the Motion, and the time for responding has passed. *See* ECF No. 169; Local Rule 105.2(a)(D. Md. 2023). No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023).

For the reasons set forth herein, the Motion is granted in part, denied in part.

## I.   LEGAL STANDARDS

A plaintiff who prevails on an FLSA claim is entitled to the payment of attorney's fees and costs. 29 U.S.C. § 216(b).[3]  A plaintiff is a "prevailing party" if he/she succeeds "on any significant issue in litigation which achieves some of the benefit. . .sought in bringing suit." *Hensley v. Eckerhart et al.*, 461 U.S. 424, 433 (1983).[4] Because judgment has been entered in Plaintiffs' favor, they are indisputably "prevailing parties" entitled to attorney's fees.

The amount awarded for fees and costs is discretionary. *Burnley v. Short*, 730 F.2d 136, 141 (4th Cir. 1984); s*ee also Randolph v. Powercomm Construction, Inc.*, 715 Fed. App'x 227, 230 (4th Cir. 2017).

---

[2] Separately, Plaintiffs filed a Bill of Costs and memorandum in support thereto, which the Court recommended that the Clerk of the Court enter in their favor. (ECF Nos. 174, 174-1, 187).  The Clerk of the Court subsequently entered an order taxing costs against Defendants. (ECF No. 190).

[3] In an FLSA action, "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

[4] Although *Hensley* explains the standards of "prevailing party" under 42 U.S.C. § 1988, *Hensley* extends the standards to "all cases in which Congress has authorized an award of fees to a 'prevailing party,'" *Hensley*, 461 U.S. at 433 n.7, and its standards are therefore pertinent to an award of fees under the FLSA.

### A.  ATTORNEYS' FEES

To calculate the amount to be awarded in attorneys' fees, a court must determine what is reasonable. *Hensley*, 461 U.S. at 433. To do so, courts engage in a three-step process. First, a court must calculate the lodestar, which is "the number of reasonable hours  expended [multiplied by] a reasonable [hourly] rate." *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013). To determine whether the hours and rates are reasonable, the Fourth Circuit has held that a court's discretion should be guided by the factors set forth in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). The twelve factors ("*Johnson* factors") are:

(1) the time and labor expended;

(2) the novelty and difficulty of the questions raised;

(3) the skill required to properly perform the legal services rendered;

(4) the attorney's opportunity costs in pressing the instant litigation;

(5) the customary fee for like work;

(6) the attorney's expectations at the outset of the litigation;

(7) the time limitations imposed by the client or circumstances;

(8) the amount in controversy and the results obtained;

(9) the experience, reputation, and ability of the attorney;

(10) the undesirability of the case within the legal community in which the suit arose;

(11) the nature and length of the professional relationship between attorney and client; and

(12) attorneys' fees awards in similar cases.

*McAfee*, 738 F.3d at 88, n.5.

Second, a court must subtract fees for hours spent on unsuccessful claims unrelated to successful ones. *McAfee*, 728 F.3d at 88. Third, a court should award "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *McAfee*, 738 F.3d at 88.

The party seeking attorney's fees bears the burden of establishing the reasonableness of those fees. *Ledo Pizza Sys., Inc. v. Ledo Rest., Inc.*, DKC-06-3177, 2012 WL 4324881, at *6 (D. Md. Sept. 18, 2012).

An attorney's fees award that is greater than the amount of judgment is not unusual. There is no rule that requires proportionality between the amount of judgment and fee award under civil rights statutes. *See Nelson v. A & H Motors, Inc.*, No. 12-2288, 2013 WL 388991, at *2 (D. Md. Jan. 30, 2013) (citing *City of Riverside v. Rivera*, 477 U.S. 561, 573–81 (1986)). The FLSA is a civil rights statute. *See id.* at *2, n.3 (citing *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 454 (2008)). The Supreme Court has opined that a rule requiring proportionality would "seriously undermine Congress' purpose" and prevents victims who frequently cannot pay counsel at market rates from effective access to the justice system. *Riverside*, 477 U.S. at 576; *see also id.* at *2. The Fourth Circuit has accordingly recognized that "[a]wards of attorney's fees substantially exceeding damages are not unusual in civil rights litigation." *Nelson*, 2013 WL 388991, at *2 (citing *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 328 n.20 (4th Cir. 2006)). Proportionality, then, is considered "only to the extent that amount is relevant to the *Johnson* factor of amount in controversy and results obtained." *Id.*

## B. COSTS

A prevailing party may also recover costs, but "only for reasonable litigation expenses." *Jones v. Dancel*, 792 F.3d 395, 404 (4th Cir. 2015)(quoting *Daly v. Hill*, 790 F.2d 1071, 1084 (4th

Cir. 1986)). An award of costs "must adequately compensate counsel without resulting in a windfall." *Daly*, 790 F.2d at 1084 n.18. Courts within the Fourth Circuit have the same discretion in awarding costs as they do when awarding attorneys' fees. *Roy v. Cnty. of Lexington, S.C.*, 141 F.3d 533, 549 (4th Cir. 1998).

## II.   ATTORNEYS' FEES AND COSTS

### A.  Plaintiffs' Motion and Reply

The Motion requests attorney's fees in the amount of $403,474.98. (ECF No. 178, p. 4). This number is ultimately predicated on 1,275.3 hours of work after purported deductions for "excessive or potentially duplicative time ($106,000)" and for "an additional five percent 'across the board' from the total monetary award sought($21,235.52)." (*Id.*; *see also* ECF No. 178-2. p. 35). As broken down by category, the Motion requests:

| Description of Event | Billed Hours | Initial Fees Requested |
|---|---|---|
| Alternative Dispute Resolution (ADR) | 46.7 | $18,586 |
| Case Development | 4.8 | $2,231 |
| Hearings | 6.3 | $2,455 |
| Depositions | 123.2 | $42,798 |
| Discovery Other than Depositions | 293.2 | $92,102 |
| Fee Petition | 70.9 | $21,814 |
| Motions Practice | 211.4 | $67,749 |
| Pleadings | 27.5 | $12,272.50 |

| Description of Event | Billed Hours | Initial Fees Requested |
|---|---|---|
| Trial | 78 | $22,620 |
| Trial Prep and Post-Trial Motions | 480.4 | $142,083 |
| TOTAL INCURRED (prior to billing judgment) | 1794.7 | $531,378.50 |
| TOTAL (after billing judgment) | 1342.4 | $424,710.50 |
| **TOTAL SOUGHT (after billing judgment and further 5 % reduction)** | 1276.3 | $403,474.98 |

In sum, Plaintiffs contend that they have appropriately incurred $531,378.50 in attorneys' fees, from which they have deducted $127,903.52, which they contend represents "24 percent of the fees incurred in this case." (Motion, p. 9).[5]

After Defendant Harvey-Cleary opposed the Motion, Plaintiffs' counsel filed a Reply, in which the total amount sought in attorneys' fees increased:

| Fee Petition (Reply Brief) | Billed Hours | Fees Requested |
|---|---|---|
| TOTAL INCURRED (prior to billing judgment) | 36.2 | $11,887 |
| TOTAL (after billing judgment) | 21.0 | $6,810.50 |
| **TOTAL SOUGHT (after billing judgment and further 5 % reduction)** | | $6,469.98 |

In sum, then, Plaintiffs seek a total of $409,944.96 in attorneys' fees.

---

[5] The Court uses the CM/ECF page numbers.

Plaintiffs' counsel argues that all of the *Johnson* factors applicable to this case support the amount of fees sought. (Motion, pp. 9-22).

### B. Defendant Harvey-Cleary's Opposition

Defendant Harvey-Cleary file an Opposition, which it believes supports its ultimate requests: (a) that the Court reduce the fees sought by 50%; and (b) allocate the amount to be paid amongst the Defendants based on the time spent on issues pertaining to each Defendant.

To that end, Harvey-Cleary advances several arguments. First, that the case was not particularly novel or complex. The litigation required Plaintiffs' counsel to follow well-established case law on the joint employer doctrine and all Plaintiffs had similar fact patterns. Thus, a reduction in fees sought is warranted due to the lack of complexity involved. Second, Plaintiffs did not prevail on all claims, and the total amount of attorneys' fees sought does not account for this reality. Third, counsel "over-lawyered" their motions practice, by filing motions that were "unnecessary, imprudent, and ultimately unsuccessful" and by claiming too many hours to prepare the fee petition. Fourth, Harvey-Cleary asserts that "many of the hours billed by Plaintiffs' counsel. . .reflect inefficiency that should not be charged to Harvey-Cleary," which resulted in unnecessary legal fees. In particular, Defendant Harvey-Cleary argues that redundant review and redrafting by several attorneys and paralegals occurred, and complains that the length of trial lasting for longer than necessary. Regarding the length of trial, Defendants take issue with the fees and costs associated with the 5th day of trial, which they claim resulted in an additional $7,365 in legal fees. As part of this argument, Defendant Harvey-Cleary seems to ask the Court to disallow costs for travel for the 5th day of trial. Fifth, the billing records for three of Plaintiffs' attorneys are "vague" and "contain block billing," which impede the Court's ability to assess whether the fees sought are reasonable. Sixth, many entries in counsel's Fee Detail 1 spreadsheet reflect duplicative billing by

more than one attorney, which violates the United States District Court for the District of Maryland: Local Rules (D. Md. 2023). Seventh, the Fee Detail 1 spreadsheet contains improper billing by attorneys for clerical/administrative tasks or attorneys who overbilled for "relatively straightforward legal tasks." Eighth, because Harvey-Cleary engaged in "good faith" efforts to settle this case despite: (a) not having verified information about the wages that Plaintiffs claimed they were owed; and (b) "counsel's insistence on enhanced damages and hundreds of thousands of dollars in attorneys' fees," some deduction is warranted. Ninth, even when taking into account the "billing judgment" Plaintiffs' counsel exercised, the Court should ultimately reduce the amount sought by 50% due to "excessive billing, inefficiency, vague billing descriptions and improper block billing." Finally, the Court should not allocate the attorneys' fees and costs awarded on a joint and several basis against the Defendants; because Plaintiffs chose to pursue litigation against Defendants TSCG and Marceron (who filed for bankruptcy) that increased the cost of litigating this matter. Thus, any monetary award imposed against Harvey-Cleary should only be based on actions related to litigation against it. (Opposition, pp. 4-16).

### C.  Plaintiffs' Reply to Opposition

Plaintiff filed a Reply, maintaining that no further fees and costs reductions are warranted because: (1) the facts of the case were hotly contested; (2) Plaintiffs seriously engaged in mediation efforts trying to result this case; (3) the motions practice was appropriate; (4) the conduct of Defendants' Marceron and Harvey-Cleary contributed to the "need" for a fifth trial day; (5) Plaintiffs are entitled to recover a reasonable amount of time spent drafting the fee petition; (6) the Local Rules permit Plaintiffs' counsel to bill for multiple attorneys strategizing and delegating tasks; (7) Plaintiff's counsel did not "block bill;" (8) Defendant Harvey-Cleary demands a higher level of particularization of counsel's descriptions of time incurred than the law requires; (9)

Defendant Harvey-Cleary inaccurate describes work performed as administrative; (10) Defendant Harvey-Cleary's "line-by-line objections" to the Fee Detail 1 spreadsheet lack merit; (11) any fees and costs awarded by the Court should be apportioned amongst all Defendants on a joint and several basis; (12) Defendant Harvey-Cleary fails to address counsel's arguments about nine of the twelve Factors; thus, Harvey-Cleary concedes Plaintiff have met their burden; and (13) by failing to challenge Plaintiffs' costs, Defendant Harvey-Cleary concedes that the costs are reasonable and appropriate.

### III.  ANALYSIS

#### A.  Hourly Rates

Plaintiffs seek hourly rates for the five attorneys who have worked on this case as follows: Monisha Cherayil, who has about 14 years of experience, billed at $350.00 per hour; Lucy Zhou, who had 5 years' experience, billed at $230.00/hour; Debra Gardner, who has more than 40 years' experience, billed at $475.00/hour; Sally Dworak-Fisher, who has 20 years of experience, billed at $475.00/hour; and Tyra Robinson, 3 years of experience, billed at $185.00/hour. In addition, Emily Woo Kee, who was a paralegal, billed at a rate of $115.00/hour; and another paralegal, Lena Yeakey, who billed at $135.00 per hour.

To determine the reasonableness of an attorney's hourly rate, courts analyze whether the rate sought is consistent with the rate that prevails in the community for "similar legal services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 890 n.11 (1984). While a court may rely upon affidavits from attorneys opining on the reasonableness of requested rates, *see, e.g., Poole ex. Rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 509-10 (D. Md. 2000), it is well established that a court may rely upon its knowledge of the Maryland market. In this district, that "market knowledge" is embedded in United States District

Court for the District of Maryland: Local Rules, Appendix B, Rules and Guidelines for Determining Attorneys' Fees in Certain Cases. ("*the Guidelines*" or "Loc. R. App. B"). *See  Chaten v. Marketsmart LLC,* Civ. No. PX-19-1165, 2020 WL 4726631, at *3 (D. Md. Aug. 14, 2020)(citing *Gonzalez v. Caron*, Civ. No. CBD-10-2188, 2011 WL 3886979, at *2 (D. Md. Sept. 2, 2011). The Guidelines, although not binding, presumptively set forth ranges of reasonable hourly rates based on an attorney's years of experience. *Gonzalez*, 2011 WL 3886979, at *2; *see also Poole*, 192 F.R.D. at 509.

The Court has examined the Guidelines and finds that the hourly rates advanced by Plaintiff's counsel and paralegals fall well within the acceptable ranges. *See* Loc. R. App. B, ¶¶ 3a., 3b., 3c., 3e. Thus, they are presumptively reasonable, and Plaintiffs have met their burden on reasonableness of rates.

### B.  Reasonableness of Hours Expended

As held above, at the second step of the lodestar process, a court must determine whether the number of hours worked by counsel and the paralegals is reasonable. Even if a court finds that the billing rate is reasonable, the party seeking fees must "show that the number of hours for which [she] seeks reimbursement is reasonable and does not include hours that are excessive, redundant, or otherwise unnecessary." *Travis v. Prime Lending*, Case No. 07-cv-065, 208 WL 2397330, at *4 (W.D. Va. June 12, 2008); *see also Hensley*, *supra*, 461 U.S. at 434.

A court has the obligation to "adjust the number of hours [billed] to delete duplicative or unrelated hours, and the number of hours must be reasonable and represent the product of 'billing judgment.'" *Nelson v. A & H Motors, Inc.* Civ. No. JKS-12-2288, 2013 WL 388991, at *1 (D. Md. Jan. 30, 2013)(quoting *Rum Creek Coal Sales, Inc. v. Capterton*, 31 F.3d 169, 174 (4th Cir. 1994)). Relatedly, when faced with an "overstaffed" case, a court can exercise its discretion and exclude

hours billed. *See Trimper v. City of Norfolk*, 58 F.3d 68, 76-77 (4th Cir. 1995)("properly reducing allowable hours because of overstaffing of attorneys is not an abused of discretion"); *see also Schlacher v. Law Offices of Phillip J. Roche & Associates, P.C.*, 574 F.3d 852, 858 (7th Cir. 2009)("overstaffing cases is inefficiently common, and district courts are therefore encouraged to scrutinize fee petitions for duplicative billing when multiple lawyers seek fees").

If a court decides to reduce the amount of fees sought, it may "use a percentage deduction as a practical means of trimming fat from a fee [petition]." *Gonzalez v. Scalinatella, Inc.*, 112 F.Supp.3d 5, 29 (S.D.N.Y. 2015)(internal citations and quotation marks omitted). Relatedly, then, courts "need not, and indeed should not, become [accountants];" instead, they may apply "rough justice," and not perform a perfect audit, as long as the courts "take into account their overall sense of a suit, and [use] estimates in calculating and allocating an attorney's time." *Guillen v. Armour Home Improvement, Inc. et al.*, Civ. No. DLB-19-2317, 2024 WL 1346838, at *2 (D. Md. Mar. 29, 2024)(quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

To aid a court in determining the reasonableness of the hours billed,  Plaintiffs are required to submit itemized time records broken down by attorney and by litigation phases. *See* Loc. R. App. B, ¶¶ 1a.-1b. (D. Md. 2023).  Plaintiffs complied with the Guidelines by providing: summary spreadsheets of dates, hours, rates, and litigation phases and categories of work performed by attorney or professional ("Fee Detail 1" or "Fee Detail 2"). (ECF Nos. 178-2, 183-2, respectively). Plaintiff also submitted declarations of trial counsel, M. Cherayil, and of four attorneys not assigned to the case, who offer their views on the reasonableness of the fees sought. (ECF Nos. 178-1, 178-3 through 178-6; 183-1).

The Court has reviewed the supporting documentation submitted by Plaintiffs' counsel. Regarding the declarations proffered by Plaintiffs to support the reasonableness of the hours spent

on this matter, the Court first recognizes the expertise of the attorneys who authored them. However, ultimately, the Court only found these declarations to be of limited probative value because none of these attorneys were actively involved in the litigation and do not claim to have personal knowledge of all of the facts. Indeed, the declarations do not reflect the awareness that the Court has regarding, e.g., inefficiencies that occurred in front of it at trial, which directly affects the reasonableness of the hours claimed.

The Court has reviewed the Fee Detail 1 and Fee Detail 2 spreadsheets, as well as the trial transcripts and the entries and associated documents reflected in the docket sheet in this case. The sections below, then, necessarily address several of the *Johnson* factors, including: Factor 1 (time and labor); Factor 2 (novelty and difficulty of questions); Factor 3 (skill required to perform legal services provided); Factor 8 (amount in controversy and results obtained); and Factor 9 (experience and abilities of the attorneys). Next, as a general matter, the Court does not agree with Defendant Harvey-Cleary that many of the entries are "block billing" or reflect performance of clerical or administrative tasks. However, as a general matter, the Court does agree that several descriptions are vague, and the Court also came away with the overall sense that this case was "overstaffed." The Court cites to several examples herein.

It is worth noting that court is not required to analyze each of the *Johnson* factors; rather, a court may consider and analyze the factors more broadly. *De Paredes v. Zen Nails Studio,* LLC, Civ. No. TDC-20-2432, 2023 WL 8235753, at *3 (D. Md. Nov. 28, 2023); *Parker v. Reema Consulting Servs., Inc.*, Civ. No. TDC-17-1648, 2022 WL 2905475, at *3 (D. Md. July 21, 2022); *Murrill v. Merritt,* Civ. No. DKC-17-2255, 2020 WL 1914804, at *3 (D. Md. Apr. 20, 2020); *Imgarten v. Bellboy Corp.*, 383 F. Supp. 2d 825, 836 (D. Md. Aug. 6, 2005).

Finally, as set forth below in Sections IV.B.11 and IV.C, even though Plaintiffs' counsel exercised "billing judgment" and reduced fees sought by approximately 24%, the Court still finds a further deduction is required.

### 1. Alternative Dispute Resolution(ADR)

Counsel asserts that they spent 46.7 compensable hours on efforts to settle this case, which resulted in $18, 586.00 in fees. (Fee Detail 1, pp. 1-2[6]). As a preliminary matter, the settlement conference with U.S. Magistrate Judge T. Sullivan occurred on September 5, 2019 (not September 3, 2019, as counsel alleges). *See* ECF Nos. 29, 30. Other than this minor error, the entries that are clearly written reflect a reasonable amount of time spent in drafting an *ex parte* letter and preparing for the mediation before Judge Sullivan.  Thus, no reduction in fees is appropriate. However, after the mediation session, some of the billing records are vague, making it hard to determine whether the work performed was reasonable. For instance, following the unsuccessful court mediation, three different attorneys discussed, researched, and/or edited a memorandum on settlement strategies on September 11, 16, and 17, 2019. It is unclear why so many experienced attorneys were required to perform these tasks. This vagueness leads the Court to find an instance of "overstaffing;" thus, the Court exercised its discretion and made a further minor deduction, applying "rough justice" when making an overall reduction to the total amount of fees sought. *See Trimper,* 58 F.3d at 76-77 (reduction in allowable hours because of overstaffing of attorneys).[7]

Next, the Court understands that the parties made efforts over the years to try to resolve this case short of trial—a point that neither the Plaintiffs nor the Defendants dispute. However, several of the billing entries are not entirely clear that the work described was associated with those efforts, and several other billing entries are unclear as to the nature and purpose of the ADR-related

---

[6] The page numbers refer to the CM/ECF page numbers at the top of ECF No. 178-2.
[7] *See* Section IV.E. for a summary of the *McAfee* steps undertaken and the ultimate reduction imposed.

work. *See, e.g.,* November 20, 2018, January 22, 2019. While counsel is correct that detailed time records are not required—*see Grayson v. Reg. Tapes Unlimited, Inc.*, Civ. No. RWT-11-887, 2013 WL 1953342, at *4 (D. Md. May 9, 2013)—a reviewing court requires sufficient descriptions of the work performed to enable it to determine whether the hours spent were reasonable. *Bocanel v. Warm Heart Family Assistance Living, Inc., et al*, 561 F. Supp. 3d 534, 539 (D. Md. 2021). Ultimately, then, in Section IV. E, the Court made a further deduction, applying "rough justice" when making an overall reduction to the total amount of fees sought.

### 2. Case Development

Counsel reports that 4.8 compensable hours were spent developing the case, amounting to $2,231 in fees. (Fee Detail 1, p. 3). The Court finds all of the entries to be sufficiently descriptive, and relate to issues that are integral to the overall litigation. *Grayson, supra,* 2013 WL 1953342, at *4 ("itemized listing of hours" combined with reasonable explanation of "how time was spent" sufficient). Because the hours claimed are reasonable, the Court did not make any reductions in amount for this category.

### 3. Pleadings

Counsel reports that 27.5 compensable hours were spent drafting pleadings, amounting to $12,272.50 in fees. (Fee Detail 1, p. 21). Despite Defendant Harvey-Cleary's argument that some of these entries are vague in such a manner as to prevent the Court from performing a reasonableness review, the Court disagrees. The Complaint was filed on December 21, 2018, (ECF No. 1), and the billing entries for September 2018 - December 2018 adequately explain the work performed before that filing was made. In addition, the billing entries for 2019 and 2020 are sufficiently descriptive for the Court to understand that they related to work performed in connection with the answers filed by the Defendants and the counterclaim filed against Jacinto

Garcia Romero. (Fee Detail, p. 21). *See Grayson, supra,* 2013 WL 1953342, at *4 ("itemized listing of hours" combined with reasonable explanation of "how time was spent" sufficient).

However, there are three entries related to two attorneys working on drafting and editing Mr. Romero's answer to the counterclaim (June 29-30, 2020). Given the extensive experience of both attorneys, it is not reasonable or efficient to have one experienced attorney drafting the pleading and another more experienced attorney (with a higher hourly rate) serving as the editor; two attorneys are not necessary for this task. The case cited by Plaintiffs, *Martz v. Day Dev. Co.*, Civ. No. JKB 15-3284, 2023 WL 2351825, at *15 (D. Md. Mar. 3, 2023), is factually distinguishable. The *Martz* court found it reasonable and not inefficient to permit reimbursement for two attorneys who worked many hours on the same appellate brief given the "complexity of the legal issues" involved, the almost $2 million judgment "at stake," and the fact that a published opinion detailed some of the novel issues sufficiently justified this arrangement. 2023 WL 2351825, at *15. In this case, in contrast, Mr. Garcia Romero's answer to the counterclaim advanced by Defendants TSCG and Marceron is 4 pages in length, and does not articulate novel or complex concepts (it consists of a lot of general denials). Again, given the experience of counsel in FLSA cases, the Court finds that the amount sought for this entry—and for several other entries related to motions, memoranda, outlines, and correspondence in virtually all litigation phases—is not reasonable. Thus, the Court exercised its discretion and made a further minor deduction, ultimately applying "rough justice" when making an overall reduction to the total amount of fees sought.  Other than these three entries, the Court finds that the time devoted to the other tasks was reasonable, and no further reductions were warranted.

### 4. *Hearings*

Counsel reports that 6.3 compensable hours were spent on hearings, amounting to $2,455.00 in fees. (Fee Detail 1, p. 3). The docket sheet reflect that the parties had hearings on September 2, 2020 and December 3, 2020 with the district judge initially assigned to the case. The Court finds the majority of the billing entries in this category to be reasonable and appropriate, except that two experienced attorneys billed for meeting with each other and other attorneys on both of these dates.  Plaintiffs' counsel is correct that  Loc. R. App. B, ¶ 2d permits more than one lawyer to bill for strategy related meetings. However, the entries are not descriptive enough to enable the Court to conclude that such a conference was "reasonably necessary for the proper management of the litigation." Loc. R. App. B, ¶ 2d. Thus, as set forth later in this Opinion, Court exercised its discretion and made a further minor deduction, applying "rough justice" when making an overall reduction to the total amount of fees sought.

### 5. *Depositions*

Counsel reports that 123.2 compensable hours were spent on depositions, amounting to $42,798.00 in fees. (Fee Detail 1, pp. 4, 5). The Court finds that the majority of the entries in this category are descriptive enough and appear to be reasonable. *See Grayson, supra,* 2013 WL 1953342, at *4 ("itemized listing of hours" combined with reasonable explanation of "how time was spent" sufficient). However, there are several entries that are vague such that they impede the Court's ability to do a reasonableness review. For instance, the entries on 3/23/21 and 3/24/21 by a paralegal "check[ing] in" with two different Plaintiffs is devoid of sufficient meaning. Next, there are entries for work on "30(b)(6) deposition outline," by two attorneys on February 22-23, 2021. Again, because the entries are so vague, given the experience of counsel in FLSA cases, the Court finds it unreasonable for two attorneys to work on an outline for the amount of time involved

(approximately 6 hours). Furthermore, the entries on October 20-21, 2020 and October 28, 2020 and October 30, 2020 reflected two experienced FLSA attorneys working on deposition outlines for Sarah Haislip in an amount close to $4,000. It is worth noting that, inexplicably these entries are not classified under one single category; they can only be found by carefully looking at two different litigation categories. Thus, the Court took into account these billing entries and made a further, larger deduction when it ultimately applied a "rough justice" overall reduction to the total amount of fees sought.

### 6. Discovery Other Than Depositions

Counsel asserts that 293.2 compensable hours were spent on "discovery other than depositions," amounting to $92,102.00 in fees. (Fee Detail 1, pp. 5-13). The entries in this category span from in or about September 2019 until June 2021, and involved the work of 3 attorneys and 1 paralegal at overlapping points in time. (*Id.*). The Court also finds that during this phase 8 different strategy meetings/conference calls occurred, involving all three attorneys and often 1 paralegal. (Fee Detail 1, pp. 6-12). The Court's review of the billing entries for this type of event yields that Plaintiffs usually claimed fees for just two attorneys, and that the descriptions are fulsome enough for the court to conclude that all such conferences were "reasonably necessary for the proper management of the litigation." Loc. R. App. B, ¶ 2d.

However, this litigation phase also contained the same overstaffing pattern of billing by two attorneys for discussing, drafting, reviewing, revising and/or editing discovery responses. *See, e.g.,* May 5, 2021, May 7, 2021, May 24-25, 2021, June 7, 2021. Next, the billing descriptions for October 11, 17, 24, 25, 28, 29 in 2019, and October 28-29, 2021, November 4-6, 2019 reflect three attorneys working on discovery requests, and the descriptions are vague or generic (e.g., "edit discovery"), such that the Court could not identify the work performed to conclude that the

requested fees for these dates were reasonable, and that three attorneys were necessary for these tasks.  In sum, the Court took into account these billing entries and made a further reduction when it ultimately applied a "rough justice" overall reduction to the total amount of fees sought.

       *7.  Fee Petition*

For preparing the initial fee petition, counsel avers that 70.9 compensable hours were required, amounting to $21,814.00 in fees. (Fee Detail 1, pp. 13-15). For the Reply, counsel claimed 36.2 additional hours. (Fee Detail 2, p. 2).

It is well established that a court maintains the discretion to decide "exactly what amount would compensate [a fee petitioner] sufficiently for the time spent on the fees phase of a lawsuit." *Trimper* 58 F.3d at 77(quoting *Daly, supra,* 790 F.2d at 1080).

The Court has reviewed the fee petition entries and finds that they are descriptive enough to understand the nature of the work performed. However, the Court believes a further reduction is warranted because of overstaffing. The Court has been given no reasonable justification why so many attorneys need to review the first and second petition, particularly a senior attorney like Ms. Gardner, such that this practice is reasonable. *See Sargeant v. Acol*, Civ. No. PWG-15-2233, 2018 WL 276431, at *7 (D. Md. Jan 3, 2013)(court found it unreasonable for highly-experienced attorneys to spend significant amounts of time on first fee petition that "a lesser attorney could have drafted;" deduction ultimately taken). The Plaintiffs cite to *Martz*, *supra*, but the fees sought to prepare that petition amounted to $17,560. 2023 WL 2351825, at *15. In *Salinas v. Com. Interiors, Inc.*, Civ. No. PWG-12-1973, 2018 WL 2752253, at *3 (D. Md. June 8, 2018), *report and recommendation adopted as modified*, 2018 WL 3912857 (D. Md. Aug. 16, 2018), the district court adopted the undersigned's reasoning, but ultimately reduced the fees sought by another ten percent after the Court found that counsel should not receive a windfall.

### 8.  Motions Practice

Defendant Harvey-Cleary contends that Plaintiffs' counsel filed unnecessary and unsuccessful motions. This Defendant cites to three motions in particular: (1) the motion to strike certain affidavit testimony that Harvey-Cleary relied upon in its summary judgment briefing; (2) motion for summary judgment; and (3) motions seeking permission to file briefing that exceeded the page limit.

Regarding the motion to strike, the Court agrees with Defendant that the fees generated in connection with this motion are entirely unreasonable for two primary reasons. First, the summary judgment briefing related to Plaintiffs' motion, including this Defendant's opposition (which contained the affidavits about which Plaintiffs complained) and the Reply, had ended by no later than August 27, 2021. *See* ECF Nos. 95, 100, 105. Relatedly, the summary judgment briefing related to Defendant's summary judgment motion, including Plaintiff's Opposition and Reply, had ended by no later than September 17, 2021. *See* ECF Nos. 101,105, and 106. Yet, Plaintiffs filed the motion to strike on October 1, 2021, roughly 30 days after the August 27, 2021 filing and approximately 14 days after the Defendant Harvey-Cleary's Reply to its summary judgment briefing.  The motion to strike was, therefore, untimely, a point that the prior judge assigned to this case made clear. *See* ECF No. 112, p. 8, n.2.  Second, and more important, the prior judge found this action to be an inappropriate challenge at the summary judgment stage, and that Plaintiffs' challenges to the affidavits did not factor into her analysis as to whether "sufficient evidence exist[ed] to permit the question of joint employer status to reach the jury." *Id.* Thus, this Court agrees that all of the fees related to these entries shall be deducted (approximately $11,000) because they were unnecessary. *Trimper*, 58 F.3d at 74.

Regarding Harvey-Cleary's challenge to the Plaintiffs' summary judgment motion against it, the Court disagrees that all of the entries should be disregarded because Plaintiffs did not prevail on this motion. One of the purposes of summary judgment briefing is to aid the parties in narrowing the issues for trial, identifying only those facts about which genuine disputes of material fact exist. *Dorsey v. TGT Consulting, LLC*, Civ. No. CCB-10-92, 2014 WL 458999, at *6 (D. Md. Feb. 4, 2014). The robust briefing by the parties led the prior judge to deny both summary judgment motions, holding that genuine issues of material fact as to the question of whether Harvey-Cleary was a joint employer precluded entry of judgment in favor of either party. Thus, the Court agrees with Plaintiffs that the briefing, served a "necessary step" in the litigation process. *See Imgarten* 383 F. Supp. 2d at 839-40. However, when reviewing the billing entries for the summary judgment motion, several are vague (e.g., "fact checking" on June 14, 2021), and there are three attorneys who worked on the summary judgment briefing. (Fee Detail 1, pp. 16-20). Reviewing the Plaintiffs' briefing, the Court finds that although it is factually detailed, it does not raise incredibly new or novel ideas related to the joint employer doctrine that would require three attorneys' time. Because this was another instance of "overstaffing," the Court exercised its discretion and made a further deduction, applying "rough justice" when making an overall reduction to the total amount of fees sought.

Finally, regarding the motion to increase the page limit on summary judgment briefs, the prior judge granted the motion, and ultimately Defendant Harvey-Cleary opposed Plaintiffs' motion with a document that exceeded the traditional page limit. (ECF Nos. 94, 100). That being said, again Plaintiffs' practice for this motion was to have two attorneys dedicate time to drafting and reviewing the motion, which was only about 1.5 pages in length, and cited to no caselaw. *See* ECF No. 91. Thus, the Court again finds that overstaffing occurred, (Fee Detail 1, p. 17, June 21,

2021), causing a further deduction, applying "rough justice" when making an overall reduction to the total amount of fees sought. *See Trimper,* 58 F.3d at 76-77 (reduction in allowable hours because of overstaffing of attorneys).

        *9. Trial*

        For trial, counsel avers that 78 compensable hours were required, amounting to $22,620 in fees. (Fee Detail 1, p. 21). Defendant Harvey-Cleary contends that counsel's "overall inefficiency" unduly prolonged the trial in this matter. Counsel for Plaintiffs counter that the trial was made longer due to the conduct of *pro se* Defendant Frank Marceron and because Defendant Harvey-Cleary cross-examined Plaintiffs on matter that were already conceded in their Requests for Admissions. The Court partially agrees with Defendant Harvey-Cleary, as set forth below.

        Stupefyingly, Plaintiffs' briefing on the issue of the length of trial ignores the admonitions that the Court made to counsel on their trial presentation inefficiencies. (*See, e.g.,* ECF Nos. 158-160, May 22, 2023 - May 24, 2023 transcripts from trial). The trial was elongated due to Plaintiffs' counsel's presentation of evidence, not due to complex facts or thorny legal issues that needed to be resolved during trial.

        Even more shocking, counsel completely ignores how she deliberately defied the Court's order to limit her presentation of evidence, which wasted the Court's time and made the trial unnecessarily longer. Specifically, on Day 3 of trial, the subject of deposition designations was discussed, and the Court specifically directed counsel how to present the evidence to it. (ECF No. 160, May 24, 2023 transcript, p. 186: lines 22-25 through p. 188, lines 1-15). Regardless, the very next day, counsel wasted the Court's time going over deposition designations contrary to the Court's order. (ECF No. 161, May 25, 2023 transcript, p. 100: lines15-25 through p. 102, line 1). Thus, the Court will deduct the time associated with counsel's presentation, and part of the trial

preparation time billed which failed to prevent a waste in trial time. (Fee Detail 1, pp. 21, 22).

In addition, on Day 4 of trial, court adjourned early (at 3:30 pm), after about 6.5 hours. *See* ECF No. 161, May 25, 2023 transcript, pp. 3 and 206 (which state the start and stop times for the day, as does ECF No. 150, the Civil Bench Trial minutes). However, inexplicably, both trial counsel billed for a full 8-hour trial day, which is inaccurate. (Fee Detail 1, p. 21). The Court has also made a further reduction for these incorrect entries.

In sum, other than the above-mentioned deductions, the Court finds that no further reductions are warranted.

### 10. Trial Prep and Post-Trial Motions

For these phases of litigation, counsel avers that 480.4 compensable hours were required, amounting to $142,083 in fees. (Fee Detail 1, pp. 21-35). The period of time applicable to these categories span from November 2022 until July 2023, and two days in October/November 2023. (*Id.*).

The Court finds that the following billing pattern occurred: three attorneys billed for what appears to be duplicate work being performed, and/or three attorneys regularly attended and billed for meetings/conferences (overstaffing issue). (*Id.*). While the Court appreciates counsel's prudence in not billing trial time for the most senior of the three attorneys (who performed no active role at trial), neither the billing records nor the declarations provide sufficient detail to persuade the Court of the reasonableness of having three attorneys prepare for trial and author the proposed findings of fact and conclusions of law. Concededly, there was a significant amount of factual evidence to mount, but counsel has not persuaded the Court that it was more efficient to have three attorneys regularly perform this phase of work, rather than just the two attorneys who actually ended up trying the case. Accordingly, the Court will deduct some time billed to account

for these practices.

### 11. Billing Judgment

As an initial matter, a prevailing party must exercise good billing judgment to "exclude from a fee request hours that are excessive redundant or unnecessary." *Trimper,* 58 F.3d at 74. If a party fails to exercise good billing judgment, the court can dramatically reduce the hours claimed. *See Spell v. McDaniel*, 852 F.2d 762, 767-71 (4th Cir. 1988)(fee award sought reduced by 70 percent due to poor billing judgment).  In addition, "[b]illing judgment requires billing accurately, with supporting documentation, for compensable tasks only." *Guillen, supra,* 2024 WL 1346838, at *14.

Counsel for Plaintiffs initially billed for 1794.7 hours on the case, before exercising "billing judgment." According to counsel, they exercised "substantial up front billing judgment," eliminating "excessive or potentially duplicative time." (Motion, p. 8). Then, counsel continues, "as a further testament to their good faith," they "cut an additional five percent 'across the board.'" (*Id.*).

Although the Court appreciates these deductions and do believe that they show good faith, in light of the billing patterns and problematic entries cited to herein, the Court cannot agree that counsel exercised enough "good judgment." In addition, the Court does not agree that the joint employer issue here was novel or posed difficult questions (*Johnson* Factor 2). The law on joint employment in a general-subcontract context is well-established, and Plaintiffs merely had to show at trial that they worked for TSCG and Frank Marceron on the Gold's Gym project, Harvey-Cleary was the general contractor on the project, and Plaintiffs were not paid for all of the hours that they worked, which benefited Defendant Harvey-Cleary.  In addition, as held repeatedly, in one breath senior counsel who worked on this case professed to have sophisticated understanding of the joint

employment doctrine, including of the seminal case on this issue: *Salinas v. Commercial Interiors* (*Johnson* Factor 3). Given the extensive experience of so many attorneys, it is not reasonable or efficient to have had multiple attorneys regularly participating in meetings, or drafting and editing memoranda or outlines drafted. (*Johnson* Factor 9). If anything, the greater level of experience should have positioned Plaintiffs to more efficiently litigate this joint-employer case.

Next, the Court does find that analysis of *Johnson* Factors 4, 6, 7, and 10 weigh in favor of Plaintiffs. Regarding the most important factor, *Johnson* Factor 8, Plaintiffs did establish liability as to Defendants Marceron, TSCG and Harvey-Cleary and defeated Defendant Marceron's counterclaim against one of the Plaintiffs. In addition, Plaintiffs did secure actual damages in an amount that equaled approximately 90% of unpaid wages claimed, with an equal amount in liquidated damages. (ECF No. 168). In sum, analysis of this factor does weigh in Plaintiff's favor.

Putting this all together, then, to achieve what more accurate billing judgment would have looked like, the Court finds that a further reduction to the lodestar amount is necessary to account for the deficiencies identified in this Memorandum Opinion. *Thompson v. U.S. Dep't of Hous. & Urb. Dev.* Civ. No. MGJ 95-309, 2002 WL 311777631, at *13 (D. Md. Nov. 21, 2002).

## C.  Subtraction of Fees for Unsuccessful Claims

The second step in the three-step fee analysis process requires a court to subtract fees for hours spent on unsuccessful claims unrelated to successful ones. *McAfee*, 728 F.3d at 88. Here, Plaintiffs initially brough suit against Darlene Marceron, and continued their case against her through more than two years of discovery before dismissing her. (ECF Nos. 1, 87). Because some part of the litigation in this case resulted in two years' worth of fees related to Mrs. Marceron, yet Plaintiffs' drop their case against her, a deduction is warranted.

### D.  Degree of Success

In the third and final step of the fee awards process, a court evaluates whether to further decrease the fee award, namely "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *McAfee*, 738 F.3d at 88. The court should only adjust the fee downward "if the relief, however significant, is limited in comparison to the litigation as a whole." *Id.* at 92 (quoting *Hensley*, *supra*, at 439-40). In doing its analysis, a court "must compare the amount of damages sought to the amount awarded." *Mercer v. Duke University*, 401 F.3d 199, 204 (4th Cir. 2005).

Plaintiffs sought treble damages under the MWPCL, with an eye towards presenting at trial consequential damages suffered by Plaintiffs stemming from the underpayment of/ failure to pay wages. Defendant Harvey-Cleary made a pretrial *motion in limine* to preclude Plaintiffs from putting on evidence at trial of financial hardship, because Plaintiffs failed to raise the issue of consequential damages, e.g., the inability to meet financial obligations (like rent), at any point before May 2023 (i.e., well after the close of discovery and at the time of the pretrial conference). According to Defendant Harvey-Cleary, permitting Plaintiffs to introduce such evidence at trial would have prejudiced it, as it was deprived of addressing such claims during discovery.  At the Pretrial Conference, Plaintiffs conceded that they had not raised the issued before discovery closed, and the Court granted Harvey-Cleary's *motion in limine*. (ECF Nos. 142, 143). Thus, the Court declined to award treble damages to Plaintiffs. But, as held earlier, Plaintiffs prevailed on the majority of their claims. And, entry of judgment against all three Defendants not only is appropriate but also serves the "nonmonetary goal" of "vindicating rights and deterring future violations" by general contractors on construction jobs. *See Butler v. Directsat USA, LLC.*, Civ. No. DKC10-2747, 2016 WL 1077258, at *6 (D. Md. Mar. 18, 2016).

The Court will only make a further minor deduction when it applies "rough justice" to arrive at the overall reduction.

### E.  Summary of Fee Reduction

The Court has walked through the three-step fee award analysis, first finding reasonable the hourly rates for the attorneys and paralegals who worked on this matter. No adjustments have been made to their hourly fee rates. Then, the Court has walked through all litigation phases to identify examples where the hours expended in each category exceeded a reasonable number of hours. As held above, the Court's general impression was that this case was frequently overstaffed. At the second step of the process, the Court considered whether a reduction was warranted to account for unsuccessful claims. There was only one truly unsuccessful claim, so the Court has modified the lodestar due to that fact. Third, the Court has identified another issue that precludes a finding of complete success by the Plaintiffs.

Putting this all together, then, the Court applied "rough justice," declined to " perform a perfect audit," but just  "[took] into account" its "overall sense of  this [lawsuit]." *Guillen*, 2024 WL 1346838, at *2.  Thus, the Court finds that an overall reduction of **$60,000**, or about a 14 percent reduction, to yield a final fee award of **$349,944.96**.

### F.  Allocation of Fee Award

Finally, Defendant Harvey-Cleary urges the Court to allocate the fee award amongst the Defendants, taking into what it calls "Plaintiffs' counsel's [choice] to pursue this case" against Defendant TSCG, Frank Marceron and Harvey-Cleary. Harvey-Cleary takes issue with counsel's strategic decisions to pursue Frank Marceron even though he filed for bankruptcy and later representation of himself as a *pro se* defendant.

The Court has analyzed *Jones v. Southpeak Interactive Corp. of Delaware*, 777 F.3d 658 (4th Cir. 2015), which is the seminal case on the question of allocation of fees amongst multiple defendants. The *Jones* court has articulated four issues for courts to consider when addressing this question:

> (1)Whether "two or more defendants actively participated in a …violation [of the law];" (2) every defendant's "ability to pay;" (3) whether a plaintiff's claims involve " a set of common issues against two or more jointly responsible defendants;" and (d) whether the work of plaintiff's counsel "cannot be so easily divided" so as to clearly identify time spent on claims against each defendant.

777 F.3d at 677-78.

Analyzing the facts in the instant case, the Court finds that the first and third factors weigh heavily in Plaintiffs' favor. This case involved Defendants TSCG and Frank Marceron, a subcontractor and its owner, who hired the Plaintiffs to work on the Gold's Gym project where Harvey-Cleary was the general contractor. At trial, Plaintiffs established that they were not paid for all of the hours that they worked, and that Defendant Harvey-Cleary was a joint employer with the other Defendants, and obtained a benefit for the services performed by Plaintiffs. Plaintiffs established that a common nucleus of operative facts existed related to: the dates and hours Plaintiffs worked, the type of work they performed, their rates of compensation, the failure to pay Plaintiffs, and Plaintiffs' repeated complaints to Harvey-Cleary employees. On these issues, Plaintiffs' counsel necessarily had to develop the same evidence against all Defendants, which makes the fourth factor weigh in favor of Plaintiffs.

The Court only finds that the facts surrounding the second factor give it some pause. Defendants correctly state that Defendant Marceron and Defendant TSCG filed for bankruptcy, and those proceedings lasted for some time, until Defendant Marceron emerged from bankruptcy and proceeded *pro se*. The decision by Plaintiffs' counsel to nonetheless continue litigating against

both of these Defendants did cause counsel to incur more legal fees.  However, the Court agrees with Plaintiffs that because Plaintiffs obtained default judgment against Defendant TSCG, it translated into less work that Defendant Harvey-Cleary had to do to establish its cross-claim for indemnification.

Moreover, it is unclear to the Court why Defendant Harvey-Cleary, who continues to profess that it was interested in resolving this matter short of trial, did not make an offer of judgment under Fed. R .Civ. P. 68 for the amount of unpaid wages and liquidated damages, or tender the full amount of unpaid wages owed (plus liquidated damages). The Court ended up awarding slightly less than the total amount of wages and liquidated damages sought.  This could have significantly curbed the fees awarded. *See*  Fed. R. Civ. P. 68(d).  Had Defendant Harvey-Cleary done so, then this case would be more like the scenario in *Hernandez v. Woodstock Bar & Grill, LLC*, Civ. No. CCB-18-1852, 2022 WL 4554843, at *7 (D. Md. Sept. 29, 2022)(court apportioned liability for attorneys' fees amongst defendants based on tender of payment of unpaid wages one year before trial).

Instead, Defendant Harvey-Cleary chose to continue to fight the facts all the way through trial, making these minimum-wage earning Plaintiffs to wait years for reimbursement, when the evidence at trial established that Harvey-Cleary had at least two Plaintiffs perform work on another side project. At trial, Harvey-Cleary vigorously challenged whether any of the Plaintiffs complained to a Harvey-Cleary employee and whether any Harvey-Cleary employee actually supervised or controlled Plaintiffs' work. Thus, the Court ultimately agrees with Plaintiff that Defendant Harvey-Cleary "fought Plaintiffs on the facts (and law) 'street by street and house by house,' thereby forc[ing] [Plaintiffs] to incur substantial legal fees." *See* Reply, p. 3, (citing *Jackson v. Egira, LLC*, Civ. No. RDB-14-3114, 2017 WL 4162128, at *4 (D. Md. July 28, 2017)).

In sum, the Court declines to allocate the fees across the Defendants in a different manner other than joint and several liability.

### G. Costs

In an FLSA case, costs that may be taxed against a losing defendant include "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell v. McDaniel,* 852 F.2d 762, 771 (4th Cir. 1988) (citing *Northcross v. Bd. of Educ. of Memphis City Schools,* 611 F.2d 624, 639 (6th Cir.1979)). In addition, federal law and the Local Rules provide for certain reimbursable expenses. *See* 28 U.S.C. § 1920; Loc. R. App. B, ¶4.

The following are examples of the categories of costs that have been charged to losing defendants: "necessary travel, depositions and transcripts, computer research, postage, court costs, and photocopying." *Almendarez v. J.T.T. Enters. Corp.,* Civ. No. JKS-06-68, 2010 WL 3385362, at *7 (D. Md. Aug. 25, 2010) (citing *Vaughns v. Bd. of Educ. of Prince George's County,* 598 F. Supp. 1262, 1289–90 (D. Md. 1984)).

To substantiate their costs, Plaintiffs also submitted various expense records. (ECF No. 178-7). Here, Plaintiffs seek reimbursement for additional copying costs ($430.20), mileage ($39.70), and lodging ($408.05) during trial. Regarding the copying costs, the Court finds that these are the types of costs that have been charged to defendants, that they are compensable under the Local Rules (Loc. R. App. B, ¶4c.), and that the amount sought is reasonable. Regarding the mileage reimbursement sought, this amount is reasonable and compensable under the Local Rules. *See* Loc. R. App. B, ¶4b. Finally, regarding the lodging, although Plaintiffs have not provided the Court with any caselaw to support reimbursement for this type of expense, the Court agrees with counsel that they could have sought up to 2 hours/per day in travel time going between the

Courthouse and their office at each attorney's hourly rate. Loc. R. App. B, ¶2e., which would have been more expensive than the lodging. Accordingly, the Court declines to disregard counsel's travel time for May 26, 2023, and ultimately finds this amount sought to be reasonable, too, and awards costs in the amount of **$877.95**.

### IV.   CONCLUSION

In sum, Plaintiffs' motion, ECF No. 170, is **GRANTED IN PART, DENIED IN PART**. The Court has made the adjustments set forth above. After that, the Court multiplied the number of reasonable hours expended by the reasonable rates for the attorneys and professionals as required by law. Plaintiffs will be awarded **$349,944.96** in attorneys' fees, and $**877.95**  in costs.

A separate Order follows.


Date: September 30, 2024                                   _____/s/_____
                                                          The Honorable Gina L. Simms
                                                          United States Magistrate Judge